■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SHANI THOMAS, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LESTER MARROW, Respondent. [712 NYS2d 548] —Order, Supreme Court, New York County (George Daniels, J.), entered on or about July 30, 1998, which granted defendants' motions to suppress evidence, unanimously reversed, on the law, the motions denied, and the matters remanded for further proceedings.

Based upon the findings of fact made by the hearing court, with which we concur, we arrive at different conclusions of law. We hold that the police had the requisite foundation for directing the occupants of a vehicle to exit it, and, once a controlled substance came into plain view when they opened the door of the vehicle, probable cause to arrest defendants.

At about 1:30 A.M. on April 6, 1997, Detective Alexis Jack and his colleague, Detective Iznardi, were parked in an unmarked van, with other members of their buy-and-bust field team nearby, when Detective Jack observed a four-door gray Toyota bearing Maryland license plates stopped in a bus stop at the northwest corner of 135th and Broadway, an area known to have a high incidence of narcotics-related problems. An hour earlier they had noted the same vehicle parked a block away, on Amsterdam Avenue between 134th and 135th Streets.

Defendant Shani Thomas emerged from the vehicle and walked toward an all-night grocery store. Detective Jack approached her (as other plainclothes officers stood nearby), identified himself and asked to speak with her; she calmly agreed. They began walking back in the direction of her car. Detective Jack inquired as to where she was coming from, Thomas stated that she and defendant Marrow, who was in the back seat of the vehicle, had been at the hospital visiting someone. The detective, who was familiar with the area, knew that there was no hospital nearby, and reasoned that, due to the late hour, any such visit would have had to end hours earlier. Given the obvious falsehood, he continued his inquiry, asking if she had been in the area earlier. She indicated that she had, and went on to volunteer the information that her license and identification were in her bag inside the car, and asked if she could retrieve them. She began to appear nervous, agitated, and on the verge of tears. Although the detective told her that would not be necessary, Thomas persisted in offering to retrieve her things from the car.

In view of Thomas's nervousness, the time of day and the drug-infested nature of the neighborhood, the out-of-State plates on the vehicle, the patently false answers that she gave as to her purpose there, and her insistence on wanting to go back into the vehicle, Detective Jack became concerned that there might be something in the car that could pose a danger to himself and the other team members. He therefore asked the occupants of the vehicle to step out.

The hearing court was correct in concluding that initially, the detective properly exercised his right to inquire, and that his continued common-law inquiry was properly based upon a

founded suspicion that criminal activity was afoot. We part ways with the hearing court in its conclusion that the request that the passengers step out of the parked car constituted an unreasonable restraint.

In the context of traffic stops, it is well established that once a vehicle is lawfully stopped for a traffic infraction, directing a driver to leave a vehicle is a de minimis additional intrusion (*see, Pennsylvania v Mimms*, 434 US 106, 111). The same reasoning has since been applied to passengers, since the "same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger" (*Maryland v Wilson*, 519 US 408, 413; *see also, People v Rodriguez*, 167 AD2d 122, *lv denied* 77 NY2d 843; *People v Diaz*, 232 AD2d 289, *lv denied sub nom. People v Martinez*, 89 NY2d 944).

Of course, where the vehicle is simply parked, rather than the subject of a lawful stop by the police, the reasoning of *Pennsylvania v Mimms* (*supra*) is not directly on point, since when a car is already lawfully stopped, asking passengers to exit amounts to simply changing where they sit or stand while already under lawful restraint (*see, id.*). When neither the vehicle nor its occupants is under any restraint, and the police have no grounds for suspicion of these particular individuals, asking a car's occupants to step out of it creates a new, unauthorized restraint (*see, People v Harrison*, 57 NY2d 470, 477). Consequently, without additional grounds for suspicion, it is improper for police to direct occupants out of a parked car (*see, People v Atwood*, 105 AD2d 1055 [where the police directed men in a parked car to exit the vehicle based solely upon an anonymous report of a man with a gun at that general vicinity]).

Here, however, the police had numerous reasons to be concerned that the individuals in the car posed a threat to them.

First, not only was a car with Maryland plates present in a drug-prone location at an extremely late hour, it had suspiciously moved to another spot. It is unlikely that a guest from out of town would drive an already legally parked car one block, and park it in a bus stop, in order to go to a grocery store. Moreover, the dubious nature of Thomas's claim about having just visited someone in a hospital called into question her real reason for being there. Finally, Thomas's repeated insistence on re-entering the car to obtain her identification, although the officer had not requested it, and indeed, had told her that he did not need to see it, and her agitation and nervousness,

legitimately gave Detective Jack reasonable suspicion that he had stumbled onto criminal behavior. Thomas's persistent attempt to re-enter the car, whose two other occupants had not exited, suggested that someone or something inside the vehicle could pose a danger to the officers.

Under the circumstances, the police had the right to conduct an extensive and focused inquiry, not only of Ms. Thomas but of the car's other occupants as well. Moreover, since the driver was already out of the car and responding to the detective's more extensive inquiries, directing two persons who were sitting in the car to exit the car did not constitute the imposition of a substantial restraint where no restraint was permissible. Rather, the restraint exercised "was extremely minimal and designed simply to insure the officer[s'] safety" (*People v Stevens*, 255 AD2d 145, 146, *lv denied* 93 NY2d 858), and was based upon a reasonable suspicion that their safety was at risk. "Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment" (*Maryland v Wilson*, 519 US, *supra*, at 414).

For all the foregoing reasons, the degree of the intrusion resulting from the police conduct here was reasonable and fully warranted under the circumstances presented. Concur—Sullivan, P. J., Nardelli, Mazzarelli and Saxe, JJ.