[764 NYS2d 42]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JASON ALVAREZ, Respondent.

First Department, September 4, 2003

APPEARANCES OF COUNSEL

*Stanley R. Kaplan* of counsel (*Joseph N. Ferdenzi* on the brief; *Robert T. Johnson, District Attorney,* Bronx County, attorney), for appellant.

*Robert E. Nicholson* for respondent.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine whether the hearing court properly granted defendant's motion to suppress physical evidence and his statements to the police where defendant's arrest arose out of a legal stop of a taxi displaying a "TRIP" decal, and the subsequent questioning of defendant by the police.

Defendant, by indictment filed on March 14, 2001, was charged with two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3], [4]), unlawful possession of pistol or revolver ammunition (Administrative Code of City of NY § 10-131 [i] [3]), and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]). Defendant subsequently filed an omnibus motion in which he sought to suppress the physical evidence seized from him, as well as any statements made to the police as the result of his arrest on January 14, 2001. A *Huntley/Mapp/Dunaway* hearing was held on January 7, 2002 (the hearing) and, by decision and order dated February 8, 2002, the suppression court granted defendant's motion. The People appeal and we now reverse.

New York City Police Department Sergeant Patrick McCooey, who at the time in question was a supervisor with the Bronx Street Crime Unit and a veteran police officer with over 3,000 arrests during a 10-year career with the New York City Police Department, was the only witness to testify at the hearing. Sergeant McCooey stated that on January 14, 2001, he and his partner, Police Officer Finley, were in an unmarked car when they observed a livery cab proceed through a stop sign on Teller Avenue onto Morris Avenue without making a complete stop. The sergeant noticed three men in the back seat of the vehicle and a TRIP sticker on its rear window. TRIP is an acronym for "Taxi/Livery Robbery Inspection Program," and cab owners who elect to participate in the program display a decal in the passenger compartment of the taxi and on the rear window, stating in English and Spanish: "THIS VEHICLE MAY BE STOPPED AND VISUALLY INSPECTED BY THE POLICE AT ANY TIME TO ENSURE DRIVER'S SAFETY." Under the TRIP guidelines, the police may briefly stop, and visually inspect, a vehicle bearing TRIP decals, and such guidelines have been found to pass constitutional muster (*People v Abad*, 98 NY2d 12, 15 [2002]).

Sergeant McCooey testified that he and his partner signaled the taxi to stop, and as the police car pulled up behind the cab,

the three passengers in the back seat turned around to observe the officers. Sergeant McCooey maintained that the area in which the stop occurred was a high crime area with "a higher tendency of robberies and assaults * * * as opposed to other areas of Bronx." The sergeant stated that Officer Finley first engaged the driver of the vehicle in a conversation which he could not hear, and then moved to the rear of the cab to speak to the passengers, at which time the sergeant spoke to defendant, who was in the rear passenger side of the taxi with the window open. Sergeant McCooey inquired as to where defendant had been picked up and where he was going, to which defendant seemed "a little hesitant on his destination" and looked to the other two passengers before answering the question. The sergeant then asked defendant if he had any weapons on him, to which defendant replied "I have a blade." Defendant attempted to produce the knife from his jacket pocket, but the sergeant told him not to and to remove his hand from his pocket.

Sergeant McCooey then asked defendant to step out of the vehicle, and once he was out, defendant again attempted to put his hand in his pocket to retrieve "the blade." At that point, the sergeant pulled defendant's hand away because he was unsure of what defendant had in his jacket and then reached inside the pocket himself to take the blade, at which time he felt something underneath the jacket. Sergeant McCooey then moved defendant's sweatshirt and jacket and discovered a loaded 9 millimeter Luger handgun. The sergeant notified Officer Finley that he had found a gun, removed the gun from defendant's waistband, and handcuffed defendant.

Once defendant was placed in the back seat of the police car, he stated, without being questioned, that he found the gun in a garbage can in a park where children were playing, and that he had taken the gun so none of the children would get hurt. Defendant maintained that he was going to turn it in to the police, but "got scared and thought he would get locked up."

The suppression court granted defendant's motion to suppress the physical evidence and his postarrest statements, and found that although the officers were entitled to stop the taxi on the basis of the traffic violation and the TRIP sticker, they were not entitled to engage in a level two common-law right of inquiry as set forth in *People v De Bour* (40 NY2d 210 [1976]) and *People v Hollman* (79 NY2d 181 [1992]).

Any inquiry into the propriety of police conduct must weight the degree of intrusion which it entails against the precipitat-

ing and attending circumstances out of which the encounter arose (*People v Salaman*, 71 NY2d 869, 870 [1988]; *People v De Bour, supra* at 223; *People v Powell*, 246 AD2d 366, 368 [1998], *appeal dismissed* 92 NY2d 886 [1998]). The court's focus must be on whether the police conduct was reasonable in view of the totality of the circumstances (*People v Batista*, 88 NY2d 650, 653 [1996]; *People v Montilla*, 268 AD2d 270 [2000], *appeal dismissed* 95 NY2d 830 [2000]), for reasonableness is the touchstone by which police-citizen encounters are measured (*People v McLaurin*, 70 NY2d 779, 781 [1987]; *People v Brown*, 277 AD2d 107, 108 [2000], *lv denied* 96 NY2d 756 [2001]; *People v Alexander*, 218 AD2d 284, 288 [1996], *lv denied* 88 NY2d 964 [1996]).

It is well established that police officers face an inordinate risk when approaching a person seated in an automobile (*Pennsylvania v Mimms*, 434 US 106, 110 [1977]; *People v Robinson*, 74 NY2d 773, 774 [1989], *cert denied* 493 US 966 [1989]), a risk rendered no less perilous by the fact that the approach was occasioned by an apparent traffic infraction (*People v Livigni*, 88 AD2d 386, 388 [1982], *affd* 58 NY2d 894 [1983]; *see also United States v Robinson*, 414 US 218, 234 [1973]). Moreover, police officers may direct a driver to exit his vehicle out of concern for their safety, " 'even though they lack any particularized reason for believing the driver possesses a weapon' " (*People v Robinson*, 74 NY2d at 774 [emphasis omitted], quoting *New York v Class*, 475 US 106, 115 [1986]). Such an intrusion has been found to be de minimis with regard to the privacy interests protected by the Fourth Amendment to the United States Constitution (*People v Thomas*, 275 AD2d 276, 278 [2000], *lv denied* 95 NY2d 939 [2000]; *People v Forbes*, 283 AD2d 92, 94-95 [2001], *lv denied* 97 NY2d 681 [2001]). This reasoning is applied equally to passengers, since the " 'same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger' " (*People v Thomas, supra* at 278, quoting *Maryland v Wilson*, 519 US 408, 413 [1997]; *see also People v Diaz*, 232 AD2d 289 [1996], *lv denied sub nom. People v Martinez*, 89 NY2d 944 [1997]).

In this matter, we harbor no doubt that the stop of the livery cab in which defendant was riding was lawful. Further, the stop occurred in a high crime area, at approximately 11:30 P.M., the cab was enrolled in the TRIP program, Sergeant McCooey was an experienced officer, and defendant acted suspiciously in that he looked back as the police officers ap-

proached the cab after the stop was made, and then was hesitant and unsure when asked his destination, conduct which was somewhat puzzling considering he was in a taxi and would be presumed to know his destination. The foregoing, coupled with the fact that the stop of the cab was, in itself, inherently dangerous for the police officers, leads us to conclude that the sergeant possessed the requisite common-law right of inquiry to question defendant as to whether he had any weapons (*see People v Battaglia*, 206 AD2d 916, 917 [1994], *affd* 86 NY2d 755 [1995]; *People v Tejeda*, 217 AD2d 932 [1995], *lv denied* 87 NY2d 908 [1995]; *People v Forte*, 234 AD2d 891 [1996], *lv denied* 90 NY2d 939 [1997]; *People v Carter*, 199 AD2d 817 [1993], *affd* 86 NY2d 721 [1995]), and that his conduct was reasonable in view of the totality of the attending circumstances (*People v De Bour, supra*; *People v Montilla, supra*). We also observe that this matter, unlike *People v Hollman* (*supra*), arises out of an encounter recognized by both the federal and New York State courts as fraught with potential danger to the police officers, whereas *Hollman* had its genesis in more docile encounters between citizens and narcotics officers in a bus station.

Moreover, the sergeant's question to defendant, do you have a weapon, is certainly no more intrusive than directing an individual to exit the vehicle, even though he may have lacked a " 'particularized reason for believing [defendant] possesse[d] a weapon' " (*People v Robinson*, 74 NY2d at 774 [emphasis omitted], quoting *New York v Class*, 475 US 106, 115 [1986]).

Accordingly, the order of the Supreme Court, Bronx County (Robert Cohen, J.), entered February 26, 2002, which granted defendant's motion to suppress physical evidence and his statements to the police, should be reversed, on the law, the motion denied, and the matter remanded for further proceedings.

BUCKLEY, P.J., ANDRIAS, FRIEDMAN and GONZALEZ, JJ., concur

Order, Supreme Court, Bronx County, entered February 26, 2002, reversed, on the law, defendant's motion to suppress denied, and the matter remanded for further proceedings.