[923 NYS2d 433]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIGUEL GARCIA, Appellant.

First Department, April 26, 2011

## APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society,* New York City (*Denise Fabiano* of counsel), and *Kramer Levin Naftalis & Frankel, LLP,* New York City (*Matan A. Koch* of counsel), for appellant.

*Robert T. Johnson, District Attorney,* Bronx (*Maureen L. Grosdidier* and *Stanley R. Kaplan* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

The issue in this case is whether the nervousness of occupants of a car stopped for a traffic infraction gives rise to a founded suspicion of criminality such that an officer's question regarding the presence of weapons in the vehicle was permissible under the common-law right of inquiry. We hold that it does not.

On September 19, 2007, uniformed officers Cleri, Manning and Payton pulled over defendant's Honda because its brake light was not working. There were five occupants in the car, two in the front and three in the back. Officer Manning's testimony confirms that he stopped the car only because of the broken tail light. The officers did not feel there was anything suspicious about the vehicle. Officer Manning testified that the three passengers in the rear seat kept looking behind them, "turning around, [and] looking side to side." When he approached them, they "kind of stiffened up." Officer Cleri, who approached the

driver's side, also observed that the passengers became very stiff and nervous and stared directly ahead. Cleri testified that he feared for his physical safety.

Officer Cleri immediately asked defendant for his license and registration. Defendant was polite and compliant and provided the requested documents. After defendant handed Cleri his license and registration, Cleri asked defendant whether there was any weapon in the car. The passenger in the rear middle seat answered, "Yes, I have a knife." Cleri had him place the knife on the floor and directed him to keep his hands in view. Following this, each passenger was frisked as he exited the car.

After the last passenger had exited, Officer Manning saw what appeared to be a weapon in the car. With the aid of a flashlight, he identified the object as "either a gun or some sort of weapon." Upon further inspection, the object turned out to be an air pistol between the front seat and the door. Throughout the entire encounter, all of the men were polite, respectful and completely compliant.

At the precinct, in an inventory search of the vehicle, Cleri discovered a second air rifle in the trunk. Also at the precinct, a little less than three hours after the officers had first encountered defendant, defendant was given his *Miranda* rights, which he waived. He was questioned for 15 or 20 minutes, and admitted that he was the owner of the air guns. Defendant was then charged with two counts of misdemeanor possession of an air pistol or rifle in violation of Administrative Code of the City of New York § 10-131 (b).[1]

Defendant moved to suppress the evidence. In a decision and order dated November 17, 2008, the court granted defendant's motion. It found that the officers' testimony about the nervous behavior by the passengers did not give rise to a founded suspicion of criminality, which would be necessary to allow a common-law inquiry. However, the court held that defendant's statement admitting ownership of the guns was voluntarily made and therefore admissible.

On January 15, 2009 the People moved to reargue that part of the November 17, 2008 decision that suppressed the physical evidence. Relying on *People v Alvarez* (308 AD2d 184 [2003], *lv denied* 3 NY3d 657 [2004]), the People argued that an inquiry

---

1. Although at some point Officer Cleri issued a summons to defendant for the defective tail light, the summons had vanished by the time of the hearing, and there was no record of a disposition of the summons.

about weapons did not reach the level of a common-law right of inquiry because it was less intrusive than asking drivers or passengers to get out of a stopped car, an action officers are clearly entitled to take.

By order dated February 27, 2009, the motion court, relying on *Alvarez*, reversed its prior order. The court found that Officer Cleri's inquiry regarding the presence of weapons was permissible even though a founded suspicion of criminality had not been established. Defendant subsequently pleaded guilty to two counts of attempted possession of an air pistol or rifle, in violation of Administrative Code § 10-131 (b), and was sentenced to a conditional discharge. Defendant now appeals from that judgment.

It is well established that in requesting a driver's credentials during a typical traffic stop, it is perfectly appropriate for an officer to ask the occupants of a vehicle to exit the vehicle (*People v Robinson*, 74 NY2d 773, 774 [1989], *cert denied* 493 US 966 [1989]; *People v McLaurin*, 70 NY2d 779, 781-782 [1987]). This is so even if the police do not have a "particularized reason" to believe that anyone in the vehicle has a weapon (*Robinson*, 74 NY2d at 774 [emphasis omitted]). Any further intrusion, however, must be justifiable under *People v De Bour* (40 NY2d 210, 217 [1976]) and *People v Hollman* (79 NY2d 181, 184-185 [1992]) (*see People v Faines*, 297 AD2d 590, 594 [2002], *lv denied* 99 NY2d 558 [2002]; *People v Barreras*, 253 AD2d 369, 373 [1998]; *People v Berberena*, 264 AD2d 670 [1999], *lv denied* 94 NY2d 901 [2000]). The first two levels of inquiry in the *De Bour* framework are referred to as a "request for information" and a "common-law right of inquiry" (*Hollman*, 79 NY2d at 184-185). In discussing the difference between the two levels, the Court of Appeals has observed:

> "If a police officer seeks simply to request information from an individual, that request must be supported by an objective, credible reason, not necessarily indicative of criminality. The common-law right of inquiry, a wholly separate level of contact, is 'activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion.' . . .
>
> "[A] request for information involves basic, nonthreatening questions regarding, for instance, identity, address or destination. As we stated in *De*

*Bour*, these questions need be supported only by an objective credible reason not necessarily indicative of criminality. Once the officer asks more pointed questions that would lead the person approached reasonably to believe that he or she is suspected of some wrongdoing and is the focus of the officer's investigation, the officer is no longer merely seeking information. This has become a common-law inquiry that must be supported by a founded suspicion that criminality is afoot" (*id.* [citation omitted]).

In applying *De Bour/Hollman*, this Court has expressly identified an inquiry about weapons, such as the one posed here, as a common-law inquiry requiring founded suspicion (*see People v Ward*, 22 AD3d 368 [2005], *lv denied* 6 NY3d 782 [2006] ["the officer had a founded suspicion that criminality was afoot, which justified the officer in asking defendant whether he had any weapons on him"]). Such inquiries must therefore be supported by the presence of circumstances that are sufficient to justify a founded suspicion of criminal activity.

■ Police observation of the occupants of a vehicle "acting nervous" does not provide the police with a founded suspicion of criminality (*People v Banks*, 85 NY2d 558, 562 [1995], *cert denied* 516 US 868 [1995] ["defendant's nervousness and the innocuous discrepancies in his and (the other passenger's) answers to the Trooper's questions . . . did not alone, as a matter of law, provide a basis for reasonable suspicion of criminality"]; *People v Milaski*, 62 NY2d 147 [1984] [holding that the two different reasons given by defendant for his presence in the parking area, along with defendant's nervousness and other inconsistencies in his statements, provided no indication of criminal conduct]; *People v Barreras*, 253 AD2d 369 [1998] [holding that even shaking hands, avoidance of eye contact and extreme nervousness disproportionate to what would be expected with a routine traffic stop is insufficient to give rise to the common-law right of inquiry]). There must be something more than mere nervousness on the part of the people in the stopped vehicle to establish a founded suspicion of criminal activity (*see People v Gonzalez*, 298 AD2d 133 [2002], *lv denied* 99 NY2d 558 [2002]; *People v Smith*, 280 AD2d 340, 341 [2001]; *People v Cisnero*, 226 AD2d 279 [1996], *lv denied* 88 NY2d 1020 [1996]). Here, by describing unspecified motions as furtive, the officers were making conclusory assertions that the conduct was suspicious. The officers' unspecific testimony does not support a find-

ing of founded suspicion of criminal activity.[2] Such a conclusion is buttressed by the fact that defendant was polite and answered all the officers' questions without resistance.

Having first made the correct decision in suppressing the evidence, Supreme Court erroneously reversed itself, operating under the mistaken assumption that *People v Alvarez* permitted intrusive questions of passengers without some basis for a founded suspicion. In *Alvarez*, however, unlike the present case, the police clearly had a founded suspicion that criminal activity was afoot. There, a livery cab was stopped for a traffic infraction in a high crime area around 11:30 P.M. The cab was part of the Taxi/Livery Robbery Inspection Program (TRIP) under which passengers were notified that the cab was subject to stop and visual inspection by the police.[3] After making the stop, a highly experienced police sergeant perceived the defendant passenger acting suspiciously. The passenger looked back as the police officers approached the cab, and then was hesitant and unsure when asked about his destination—conduct that was somewhat odd considering he was in a taxi and would be presumed to know where he was going. These circumstances led this Court to conclude that "the sergeant possessed the requisite common-law right of inquiry to question the defendant as to whether he had any weapons" (308 AD2d at 188). Here, other than the occupants of the vehicle being nervous, there was no evidence indicating criminality, and thus, *Alvarez* is inapposite (*People v Barreras*, 253 AD2d at 373 ["(o)nce defendant's papers were all found to be in order, the officers, without more, were obligated to issue the stop-sign summons and allow defendant to resume his journey, i.e., the initial justification for seizing and detaining defendant . . . was exhausted" (internal quotation marks and citations omitted)]). While the *Alvarez* decision took into consideration the dangers to police associated with traffic stops, it did not announce a new rule that an inquiry about the presence of weapons in a stopped car is outside the *DeBour/Hollman* framework, and we find no basis to do so here.

▮ The initial ruling below—that Officer Cleri violated defendant's rights by asking whether he or his fellow passengers

---

**2.** Indeed, the motion court in its first order found that "there was no testimony adduced at the hearing that Officer Manning and Cleri observed any occupant of the Accord doing anything suspicious other than acting nervous."

**3.** The Court of Appeals upheld the constitutionality of the TRIP program in *People v Abad* (98 NY2d 12, 17-18 [2002]).

had any weapons—was correct. New York State law requires a founded suspicion that criminality is afoot to engage in a common-law inquiry as Officer Cleri did, and no such suspicion is supported by the record here. Moreover, defendant's statement to the police was fruit of the poisonous tree, as the custodial interrogation was itself predicated on unconstitutional behavior (*People v Dodt*, 61 NY2d 408, 417 [1984] [where the evidence sought to be suppressed "followed directly from the illegal arrest and detention of defendant, it (is) error to admit (that) evidence . . . at trial"]).

Accordingly, the judgment of the Supreme Court, Bronx County (Seth L. Marvin, J.), rendered March 12, 2009, convicting defendant, upon his plea of guilty, of two counts of attempted unlawful possession of an air pistol or air rifle in violation of Administrative Code of the City of New York § 10-131 (b) (1), and sentencing him to a conditional discharge, should be reversed, on the law and the facts, the judgment vacated, the suppression motion granted, and the information dismissed.

GONZALEZ, P.J., SWEENY, FREEDMAN and ABDUS-SALAAM, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered March 12, 2009, reversed, on the law and the facts, the judgment vacated, the suppression motion granted, and the information dismissed.