■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH RAINEY, Appellant. [644 NYS2d 212]

At 12:18 A.M. on February 6, 1994, two police officers responded to a radio transmission reporting two African-American males selling drugs at 2917 Eighth Avenue. According to the transmitted information, one of the suspects wore a black jacket and black pants and the other wore a black jacket, blue pants, blue hat, and brown Timberland boots. Two minutes after receiving the broadcast, the officers arrived at the location they had been directed to in the radio broadcast. They observed the defendant, who was wearing a green jacket with a purple and black lining and who was not wearing black pants. Defendant was exiting a beauty parlor on the avenue and walking toward 2917 Eighth Avenue and was accompanied by another African-American male who wore a black jacket and pants. No one else in the area matched the descriptions broadcasted over the radio.

One officer exited the patrol vehicle and stopped the defendant and his companion at a distance of one storefront from 2917 Eighth Avenue. Both men complied with the officer's direction to stop. The officer then asked them "where they were coming from", to which the two men replied, "from down the block." When next asked "where are you going", the defendant answered that he was "going to a party." During this exchange the defendant moved his hand around in his left jacket pocket. However, the officer did not notice a bulge or anything unusual regarding the defendant's pocket area. As they were talking, the officer asked the defendant to remove his hand from his pocket, but the defendant gave no response.

The officer testified, in a general manner, that he feared for his safety and therefore grabbed the defendant's left wrist and removed his hand from the pocket. Upon patting the outside of the jacket pocket, the officer felt a square shaped object which he believed to be a beeper. Nevertheless, the officer testified that he looked inside defendant's jacket pocket to make sure the object was a beeper out of concern that the object was a

gun disguised as a beeper. When he looked inside the defendant's pocket, the officer observed white envelopes he believed to be packages of marijuana and placed the defendant under arrest. After conducting a further search, the police recovered 7 to 8 envelopes containing cocaine and two packages of marijuana. The defendant's companion was frisked and allowed to leave.

"It is well established that an anonymous tip which provides a general description and specifies a location of a 'man with a gun' does not, without more, constitute a reasonable suspicion to stop and frisk anyone who may happen to meet the description" (*People v Gray*, 154 AD2d 301, 302). The lack of accountability for false reports in such instances renders anonymous tips the weakest sort of information and thus "will generally warrant no more than the exercise of common-law right of inquiry" *(supra,* at 302). In the instant case, the evidence adduced at the suppression hearing did not establish that the police officer possessed the requisite level of information needed to justify a frisk. Here, there was not such a degree of congruity between the facts reported and the facts observed by the officer on the scene such that the reliability or authenticity of the anonymous tip could be assumed. Rather, under the circumstances here, where the defendant did not fit the general description of either of the suspects described in the radio run, at the outset of this police-citizen encounter, all the officer was permitted to do was to request information, not conduct a frisk (*contrast, People v Perez*, 224 AD2d 313, 314 [Wallach, J., dissenting]).

The alternative rationale proffered by the People,. that the officer reasonably feared for his safety, is also unsupported by the evidence adduced at the suppression hearing. The radio broadcast did not indicate that the suspects were armed, or that the officers had any reason to fear for their safety. The officer did not indicate that he felt threatened when the defendant and his associate were first responding to his initial questions. Nor did the officer observe any type of bulge on the defendant or the other stopped individual. Moreover, even if the defendant's hand in his pocket justified a higher level of intrusive police conduct, once the officer conducted the patdown search and discovered that the defendant did not possess a weapon, his concern was dissipated and it was improper for him to look into his pocket (*see, e.g., People v Vullis*, 131 AD2d 616 [2d Dept 1987] [upon retrieving a plastic beeper from the defendant's pocket the arresting officer should have ended her search]).

Accordingly, defendant's motion to suppress the physical evidence seized from his person should have been granted. Concur—Murphy, P. J., Milonas, Williams, Tom and Mazzarelli, JJ.