■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DENNIS ANDERSON, Respondent. [793 NYS2d 353]—

Order, Supreme Court, New York County (Lewis Bart Stone, J.), entered on or about January 6, 2004, which granted defendant's motion to suppress physical evidence, unanimously reversed, on the law, the motion denied and the matter remanded for further proceedings.

New York City Police Detective Steven Taenzer was the only witness to testify at a suppression hearing held on January 6, 2004. Detective Taenzer stated that he and several other officers were conducting a livery taxi safety checkpoint at the intersection of 155th Street and Edgecombe Avenue in New York County, which was marked with approximately 20 flares and 20 traffic cones. There were also several unmarked police cars at the intersection, several with their lights flashing, and a number of the officers at the scene wore "NYPD" jackets.

Taenzer maintained that at approximately 9:50 P.M., he observed a green Acura approach the checkpoint, make an illegal U-turn, and proceed away in the opposite direction. Taenzer and his partner then entered a police car, activated its lights, and stopped the Acura approximately one-quarter mile away.

Taenzer testified that he approached the Acura on the passenger side, while his partner approached the driver's side, and that defendant was driving the vehicle and a second individual,

later identified as Charles Gopie, was in the front passenger seat. Taenzer averred that as he approached the Acura with his flashlight turned on, he observed Gopie "turning" and "bending" his body toward defendant, as well as trying to adjust something in the center console of the vehicle. As Taenzer neared the vehicle, Gopie slammed the center console shut and turned so that he was facing forward. Taenzer could not ascertain whether Gopie had anything in his hand.

Taenzer, at that point concerned that Gopie was attempting to conceal a weapon either in the console or on his person, opened the passenger door and directed Gopie to exit the vehicle. Gopie complied and, as Taenzer patted him down, he asked Gopie whether he had any weapons on his person. Gopie did not answer the question and after finding no weapons on Gopie's person, Taenzer brought him to the back of the vehicle where Taenzer's partner had brought defendant. Neither defendant nor Gopie were handcuffed. Taenzer immediately returned to the front passenger area of the Acura, opened the console, and discovered a clear plastic bag containing crack cocaine.

The hearing court credited Taenzer's testimony and made findings of fact in accordance therewith. Employing what it termed a "mathematical approach" to analyzing the evidence, the hearing court, in granting defendant's motion, held, inter alia, that: the illegal U-turn was not by itself furtive, as it is "not unreasonable to avoid delays in New York City"; the officer's concern that there may have been a weapon was not unreasonable, but that concern "was reduced" once the individuals were removed from the vehicle; and Gopie's failure to respond to Taenzer's question regarding whether or not he had a weapon was "equivocal" absent proof Gopie understood and spoke English. The People appeal and we now reverse.

We first note that this type of discrete analysis of each factor, as employed by the hearing court, is inappropriate as the officers are confronted with only a complete set of circumstances (*People v Carvey*, 226 AD2d 193, 193-194 [1996], *affd* 89 NY2d 707 [1997], *see also People v Martinez*, 80 NY2d 444, 448 [1992]). Indeed, it is well settled that any inquiry into the propriety of police conduct must weigh the degree of intrusion which it entails against the precipitating and attending circumstances out of which the encounter arose (*People v Salaman*, 71 NY2d 869, 870 [1988]; *People v De Bour*, 40 NY2d 210, 223 [1976]). The court's focus must center on whether the police conduct was reasonable in view of the totality of the circumstances (*People v Batista*, 88 NY2d 650, 653 [1996]; *People v Montilla*, 268 AD2d 270 [2000], *appeal dismissed* 95 NY2d 830 [2000]),

for reasonableness is the touchstone by which police-citizen encounters are measured (*People v McLaurin*, 70 NY2d 779, 781 [1987]; *People v Brown*, 277 AD2d 107, 108 [2000], *lv denied* 96 NY2d 756 [2001]).

It is also well established that police officers face an inordinate risk when approaching a person seated in an automobile (*Pennsylvania v Mimms*, 434 US 106, 110 [1977]; *People v Robinson*, 74 NY2d 773, 774 [1989], *cert denied* 493 US 966 [1989]), a risk which is rendered no less perilous by the fact that the approach was precipitated by an apparent traffic infraction (*People v Alvarez*, 308 AD2d 184, 187 [2003], *lv denied* 3 NY3d 657 [2004]; *People v Livigni*, 88 AD2d 386, 388 [1982], *affd* 58 NY2d 894 [1983]). Moreover, police officers may direct a driver to exit his vehicle out of concern for their safety " 'even though they lack any particularized reason for believing the driver possesses a weapon' " (*People v Robinson*, 74 NY2d at 774 [emphasis omitted], quoting *New York v Class*, 475 US 106, 115 [1986]), and such an intrusion has been found to be de minimis with regard to the privacy interests protected by the Fourth Amendment to the United States Constitution (*People v Forbes*, 283 AD2d 92, 94-95 [2001], *lv denied* 97 NY2d 681 [2001]; *People v Thomas*, 275 AD2d 276, 278 [2000], *lv denied* 95 NY2d 939 [2000]). This reasoning applies with equal force to passengers, since the same weighty interest in an officer's safety exists, regardless of whether the occupant of the stopped vehicle is a driver or a passenger (*People v Alvarez*, 308 AD2d at 187; *People v Thomas*, 275 AD2d at 278; *Maryland v Wilson*, 519 US 408, 413 [1997]).

In the matter before us, we find that the police action, in view of the totality of the circumstances presented, was reasonable. Initially, the officers observed the vehicle make an illegal U-turn in the face of an obvious police presence, in an apparent attempt to avoid an encounter with the officers. Taenzer, after the car was pulled over, then observed furtive behavior on the part of Gopie, which included bending and leaning toward the defendant driver while trying to adjust something in the center console. Gopie then slammed the center console shut as he was approached by Taenzer, and refused to answer Taenzer's question about the presence of weapons.* These observations by the police officer clearly provided a reasonable objective basis to fear for his safety, which justified Taenzer's limited intrusion into the console of the car (*see People v Worthy*, 261 AD2d 277 [1999], *lv denied* 93 NY2d 1029 [1999]; *People v Cisnero*, 226

---

* It is unclear what prompted the hearing court's speculation that Gopie may not have understood English, but we perceive nothing in the record which might have triggered the hearing court's theory.

AD2d 279 [1996], *lv denied* 88 NY2d 1020 [1996]; *see also People v Mundo,* 99 NY2d 55 [2002]). Concur—Andrias, J.P., Saxe, Friedman, Marlow and Nardelli, JJ.