[799 NYS2d 444]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROY HENSEN, Respondent.

First Department, July 14, 2005

APPEARANCES OF COUNSEL

*Robert M. Morgenthau, District Attorney*, New York City (*Mary C. Farrington* of counsel), for appellant.

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Laura I. Appleman* of counsel), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine whether the hearing court properly suppressed certain physical evidence recovered from defendant's person after the livery cab in which he was a passenger was pulled over for a routine traffic stop.

Defendant, by New York County indictment number 3237/02, was charged with criminal possession of a controlled substance in the second degree (Penal Law § 220.18 [1]). Defendant subsequently filed an omnibus motion in which he sought, inter alia, to suppress all physical evidence seized from him, as well as any statements made to the police at the time of his arrest. A *Huntley/Mapp* hearing was held on January 20, 2004, at the conclusion of which the hearing court suppressed the narcotics seized from defendant at the time of his arrest.

New York City Police Department Detective Conrad Perry, who at the time in question held the rank of police officer, was the only witness to testify at the hearing. Detective Perry stated that on April 10, 2002, he and his partner, Police Officer Hector Natal, were in plain clothes, in an unmarked police vehicle, and assigned to anticrime patrol in the vicinity of 162nd Street and Amsterdam Avenue in Manhattan. The neighborhood was known to the police as an area with a high percentage of robberies and illegal narcotics activity.

Detective Perry testified that at approximately 5:00 P.M., he and his partner were driving north on St. Nicholas Avenue when they observed a livery cab proceed through a red light while turning south onto the avenue. The officers made a U-turn and pulled the vehicle over at the intersection of 161st Street and St. Nicholas Avenue.

The officers exited their vehicle and Officer Natal approached the driver, whereas Detective Perry moved toward the passenger side of the vehicle, where defendant was in the rear passenger

seat. Officer Natal told Detective Perry "Heads up," at which point Perry saw defendant "making a lot of excess movement and putting his hands in and out of his pockets and bending over." Perry, at that juncture, became concerned for his safety because he could not determine whether defendant had a weapon.

Perry testified that he opened the rear door of the cab, told defendant to stop moving around, and asked him to step out of the vehicle. Defendant, as he exited the cab, still had his hands in his pockets and Perry directed him to remove them, a request with which defendant complied. Perry stated, however, that before defendant fully stood up, he threw himself to the ground, on his back, and put his hands back in his pockets. Perry again told him to stop and asked him if he had "anything on you that you are not supposed to have," to which defendant replied, "It's not mine, he put that on me," referring, in Perry's view, to the livery cab driver. At the time defendant made that statement, he had not been touched or asked anything else by the officers, who had not drawn their guns.

Perry maintained that when defendant started to reach into his pocket again, he became concerned that defendant might have a weapon, so he grabbed defendant's hands, saw they were empty, and reached into defendant's pants pockets, at which time he recovered two bags of crack cocaine. Detective Perry then checked defendant's jacket pockets, from which he recovered nine vials and six envelopes of crack cocaine. Defendant was placed under arrest.

At the conclusion of the hearing, the court delivered its findings of fact and conclusions of law from the bench, crediting the testimony of Detective Perry and finding the facts to be in accordance therewith. The court concluded, as defendant conceded, that the stop of the livery cab was valid and that Detective Perry was within his rights to ask defendant to get out of the vehicle. The court further found that Perry, clearly concerned for his safety as a result of defendant's furtive behavior, including continually reaching into his pants pockets, was within his rights to ask defendant if he had anything he should not have, although the court opined that it would have been preferable if he had asked defendant if he had anything that could hurt the officer. The court stated that defendant's answer clearly indicated he had something illegal, although it didn't indicate what he had.

The court then concluded that Perry was faced with an ambiguous situation: if the defendant had admitted possessing

illegal narcotics or a weapon, then Perry would have been within his rights to reach into defendant's pocket, but because defendant did not identify what he possessed, Perry, because of a legitimate fear for his safety, should have restricted his actions to patting down defendant for a weapon. The court held that Perry's intrusion into defendant's clothing, however, a constitutionally protected area, was impermissible, and that the evidence, therefore, had to be suppressed.* We disagree and reverse.

It is well established that any inquiry into the propriety of police conduct must weigh the degree of intrusion which it entails against the precipitating and attending circumstances out of which the encounter arose (*People v Salaman*, 71 NY2d 869, 870 [1988]; *People v De Bour*, 40 NY2d 210, 223 [1976]). The court's focus must be directed on whether the conduct of the police was reasonable in view of the totality of the circumstances (*People v Batista*, 88 NY2d 650, 653 [1996]; *People v Varlack*, 290 AD2d 647, 648 [2002], *lv denied* 97 NY2d 762 [2002]), for reasonableness is the touchstone by which police-citizen encounters are measured (*People v Molnar*, 98 NY2d 328, 331 [2002]; *People v McLaurin*, 70 NY2d 779, 781 [1987]).

It is also well settled that police officers, when approaching a person seated in an automobile, face an inordinate risk (*Pennsylvania v Mimms*, 434 US 106, 110 [1977]; *People v Robinson*, 74 NY2d 773, 774 [1989], *cert denied* 493 US 966 [1989]) and, accordingly, may direct a driver to exit his vehicle out of a concern for their safety even though they may lack a specific reason for believing that the driver is in possession of a weapon (*People v Robinson*, 74 NY2d at 774; *People v Anderson*, 17 AD3d 166, 168 [2005]). This reasoning applies with equal force to passengers in the detained vehicle, since the same weighty interest in a police officer's safety exists, regardless of whether the occupant of the vehicle is a driver or a passenger (*People v Anderson*, 17 AD3d at 168; *People v Thomas*, 275 AD2d 276, 278 [2000], *lv denied* 95 NY2d 939 [2000]; *see also People v Mundo*, 99 NY2d 55, 58 [2002]).

In the matter at bar, we find that, in view of the totality of the circumstances presented, the actions of Detective Perry were reasonable. There is no dispute that the officers acted properly when they stopped the livery cab for a traffic violation,

---

* The hearing court opined that what occurred was a "technical[ ]" violation of defendant's rights, that Perry had acted in a "professional manner," and that, objectively, Perry did "what you would want somebody to do in that circumstance."

a point conceded by defendant before the hearing court. We also find that Detective Perry was justified in directing defendant to take his hands out of his pockets and to exit the vehicle, especially in light of defendant's furtive behavior of frantically putting his hands in and out of his pockets while bending forward in the backseat of the cab (*see People v McLaurin,* 70 NY2d at 781; *People v Sass,* 217 AD2d 428, 429 [1995], *lv denied* 87 NY2d 907 [1995]), coupled with the fact that this type of encounter has been recognized by both the state and federal courts as fraught with potential danger to police officers (*People v Alvarez,* 308 AD2d 184, 188 [2003], *lv denied* 3 NY3d 657 [2004]).

It is at this point that Detective Perry was faced with what the hearing court aptly characterized as an "astonishing situation," as defendant suddenly threw himself to the ground and again thrust his hands into his pockets. Fearing for his safety, Detective Perry was justified in yet again directing defendant to remove his hands from his pockets, with which he complied, and in asking defendant if he had anything in his possession that he should not have. When defendant, albeit nonspecifically, answered the detective in the affirmative, and once again reached for his pocket, the officer's already aroused fear for his safety was understandably heightened and his subsequent reach into defendant's pocket was, in our view, reasonable under the circumstances as a reflexive protective measure (*Matter of Edwin C.,* 240 AD2d 348 [1997], *lv denied* 91 NY2d 802 [1997]; *Matter of Kayode A.,* 236 AD2d 214 [1997], *lv denied* 90 NY2d 802 [1997]) for, as it has often been stated, an officer need not "await the glint of steel" before taking reasonable measures to protect his or her own safety (*see People v Allen,* 73 NY2d 378, 380 [1989]; *People v Peart,* 283 AD2d 14, 18 [2001], *lv dismissed sub nom. People v Chang,* 96 NY2d 939 [2001]).

Accordingly, the order of the Supreme Court, New York County (Herbert I. Altman, J.), entered January 20, 2004, which, after a *Huntley/Mapp* hearing, granted defendant's motion and suppressed the physical evidence seized from defendant at the time of his arrest, should be reversed, on the law, the motion denied, the indictment reinstated, and the matter remanded for further proceedings.

Saxe, J.P., Sullivan and Williams, JJ., concur.

Order, Supreme Court, New York County, entered January 20, 2004, reversed, on the law, defendant's motion to suppress the physical evidence seized from him at the time of his arrest denied, the indictment reinstated and the matter remanded for further proceedings.