■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRANDON ALLEN, Appellant. [838 NYS2d 567]—

Judgment, Supreme Court, New York County (John Cataldo, J.), rendered June 17, 2005, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the fourth degree, and sentencing him, as a second felony offender, to a term of 3½ to 7 years, affirmed.

The court properly denied defendant's suppression motion. There is no basis for disturbing the court's credibility determinations, which are supported by the record (*see People v Prochilo*, 41 NY2d 759, 761 [1977]).

Just before midnight on December 1, 2004, in a deserted area near the West Side Highway and 125th Street, a New York Police Department anticrime team lawfully stopped a vehicle for a traffic violation. As one of the officers, a 15-year veteran of the

Department who had made over 500 arrests, approached the vehicle, he saw defendant, who was the passenger, and the other occupant of the car bend over and appear to pass something between them. Defendant then quickly put his hands in his pockets. In addition, he was visibly nervous in that his hand shook as he handed the officer his identification. This flurry of furtive, suspicious conduct gave the officer a reasonable suspicion that defendant might be concealing a weapon, thereby justifying a frisk (*see e.g. People v Crespo*, 292 AD2d 177 [2002], *lv denied* 98 NY2d 709 [2002]), notwithstanding any possible innocent explanations for defendant's individual actions.

During the patdown, the officer felt what appeared to be a quantity of pills in a bag (which is not a typical container for lawful medications). This observation, coupled with defendant's suspicious behavior, provided, at the very least, the basis for a common-law inquiry (*see e.g. People v Alvarez*, 308 AD2d 184, 188 [2003], *lv denied* 3 NY3d 657 [2004]). When the officer asked what the object was, defendant replied that it was narcotics, and that response provided probable cause for defendant's arrest. There is no merit to defendant's argument that the officer was required to administer *Miranda* warnings before making that inquiry. While defendant may have been seized for Fourth Amendment purposes, he was not yet in custody for *Miranda* purposes (*see Berkemer v McCarty*, 468 US 420, 436-437 [1984]; *People v Bennett*, 70 NY2d 891 [1987]). Following defendant's lawful arrest, the officer recovered the bag, and properly obtained other statements from him. Concur—Friedman, J.P., Marlow, Williams and Buckley, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent. On these scant and equivocal facts, I would conclude that the officer did not have the requisite "knowledge of some fact or circumstance that supports a reasonable suspicion that [defendant was] armed or pose[d] a threat to safety" (*People v Batista*, 88 NY2d 650, 654 [1996]). That defendant was not wearing a seat belt adds nothing to the analysis as it hardly has any logical bearing on the key issue of whether defendant was armed or dangerous. Nor is this issue affected either by the number of arrests the officer had made or by whether the area was "deserted." Accordingly, the propriety of the search reduces to these facts: after the car was stopped, defendant and the driver were observed "moving together like they were doing something in the front seat in a hunched over, bent over manner." The officer "didn't know if they were passing something back and forth," but "[t]hat's what it seemed" to him as he approached. When the officer got to the car, defen-

dant "very rapidly" placed his hands into the front pockets of his jacket. Defendant's hand was shaking as he handed the requested identification to the officer, who then asked defendant to step out of the vehicle. After defendant got out, the officer asked him if he had any sharp objects in his pocket that could hurt the officer. Defendant said no and the officer then frisked him, thereby precipitating a chain of events that led to the recovery from defendant's person of a bag containing over 100 pills of "ecstasy."

Of course, police officers may direct the occupants to exit a vehicle after a lawful traffic or investigatory stop (*Pennsylvania v Mimms*, 434 US 106, 111 [1977]; *People v Robinson*, 74 NY2d 773, 775 [1989], *cert denied* 493 US 966 [1989]). When a vehicle is lawfully stopped, however, it would be unreasonable to think that the occupants of the vehicle will remain motionless. Accordingly, the mere fact of equivocal movements by the occupants of a stopped vehicle is not sufficient to establish reasonable suspicion. If the law were otherwise, the authority to conduct a frisk of the person of all the occupants of a lawfully stopped vehicle would be a practical—albeit not a necessary—incident to the authority to direct the occupants to exit the vehicle.

In this case there is not much more than equivocal movements by defendant and the driver. True, the officer testified that defendant's hand was shaking and he appeared nervous. In *People v Prochilo* (41 NY2d 759 [1977]), under factual circumstances far more probative of the possible presence of a weapon than presented here, the Court of Appeals held that the police lacked reasonable suspicion despite the defendant's "nervous uneasiness" (41 NY2d at 763). As the Court there stated, "[o]n this state of the record there was nothing in defendant's standing behind the pimp, in his nervousness or his slouched stature, or the fact that he had his hands in his coat pockets and removed them very slowly when requested to do so, or that a heavy object slid against the material of defendant's pocket which can be said to be reasonably referable to or indicative of the presence of a revolver" (*id.*). Here, defendant's nervousness and his act of "very rapidly" placing his hands in his jacket (on a winter evening) are similarly not reasonably referable to or indicative of the presence of a weapon. And here, of course, there was no testimony that prior to the frisk the officer saw a heavy object in one of defendant's pockets or even a bulge of any kind on his person.

On these facts, I have no difficulty concluding that the officer had reasons to be suspicious. I cannot agree that the police had

a reasonable suspicion that defendant was armed or dangerous. Our decision in *People v Rainey* (228 AD2d 285 [1996], *lv denied* 88 NY2d 1023 [1996]) is also instructive. Police officers, responding to a radio transmission of two individuals selling drugs, approached the defendant, whose clothing did not match the general description communicated to the officers, and his companion, whose clothing did match the description. As the defendant and his companion were responding to questions from the officers, defendant "moved his hand around in his left jacket pocket" (*id.* at 286). In addition, "[a]s they were talking, the officer asked the defendant to remove his hand from his pocket, but the defendant gave no response" (*id.*). This Court held that the ensuing frisk was unjustified (*id.* at 287), stressing that the officer "did not notice a bulge or anything unusual regarding the defendant's pocket area" (*id.* at 286).

The cases the People cite are distinguishable. In *People v Hensen* (21 AD3d 172 [2005], *lv denied* 5 NY3d 828 [2005]), police officers stopped a livery cab after it ran a red light. As the officers approached the cab on foot, the defendant, who was in the rear passenger seat, was "making a lot of excess movement and putting his hands in and out of his pockets and bending over" (*id.* at 174). As the defendant exited the cab at the direction of one of the officers, he removed his hands from his pockets in response to the officer's request. Before standing up, the defendant "threw himself to the ground, on his back, and put his hands back in his pockets" (*id.*). When the officer asked if he had anything on his person that he was not supposed to have, the defendant responded, "It's not mine, he put that on me," an apparent reference to the driver (*id.*). In this case, suffice it to say, defendant did not engage in any such highly unusual conduct indicative of what the defendant in *Hensen* had tacitly admitted, namely, that he did have something in his pockets he was not supposed to have. In *People v Anderson* (17 AD3d 166 [2005]), the police stopped the vehicle defendant was driving because the vehicle "ma[d]e an illegal U-turn in the face of an obvious police presence, in an apparent attempt to avoid an encounter with the officers" (17 AD3d at 168). In addition to this unusual and suspicious circumstance, as the officers approached the vehicle the front passenger was " 'turning' and 'bending' his body toward defendant, as well as trying to adjust something in the center console" before slamming it shut (*id.* at 167).

The case the majority cites, *People v Crespo* (292 AD2d 177 [2002], *lv denied* 98 NY2d 709 [2002]), also is distinguishable. Following the stop of the vehicle in which the defendant was a

passenger, the defendant was observed adjusting his jacket, apparently repeatedly, away from his body while looking at the officer. To be sure, that conduct also is equivocal. But in *Crespo* the frisk was supported by another factor not present here. That is, the vehicle was stopped by the police for driving backwards at a high rate of speed, leading this Court to point out that "the unusual operation of the car suggested the possibility of criminal activity" (*id.*).

This Court has made clear that the evidence at a suppression hearing bearing on reasonable suspicion or probable cause cannot be defused of its force by a discrete analysis of each particular factor in isolation from all other evidentiary facts (*People v Anderson*, 17 AD3d at 167). The totality of the circumstances in this case, however, is not more than the sum of its parts. Each of the relevant factors is equivocal and mundane, not unusual, the vehicle was not stopped for reasons suggestive of criminal activity, and nothing in the evidence was indicative of the presence of a weapon. The majority's review is cursory and conclusory, which is all the more unfortunate given that, as a practical matter, we act as a court of last resort in resolving the Fourth Amendment issue presented by the appeal (*see People v Pines*, 99 NY2d 525, 527 [2002]; *People v Roque*, 99 NY2d 50, 54 [2002]; *see also People v Celaj*, 1 NY3d 588, 589 [2004]). Accordingly, I would reverse the judgment of conviction and grant the motion to suppress physical evidence.