■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RASHARD JOHNSON, Appellant. [974 NYS2d 453]—

Judgment, Supreme Court, New York County (Herbert J. Adlerberg, J.H.O,. at suppression hearing; Richard D. Carruthers, J., at suppression ruling, plea and sentencing), rendered November 23, 2011, convicting defendant of criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to a term of seven years, unanimously affirmed.

The court properly denied defendant's suppression motion. There is no basis for disturbing the court's credibility determinations. The totality of the information available to the police provided reasonable suspicion of criminality and thus warranted a stop and frisk, even though each piece of information, viewed in isolation, may have had an innocent explanation (*see e.g. People v Rodriguez*, 71 AD3d 436 [2010], *lv denied* 15 NY3d 756 [2010]).

The events at issue took place at night in a particular location known to the police to be drug prone and dangerous. Defendant and another man fit the general description of two men who had recently committed a robbery at that location. Defendant and the other man made hand motions that appeared to be a furtive transfer of a concealed object, rather than a normal handshake. The police had just observed the other man engaging in a pattern of suspicious behavior, including giving false information when the officers questioned him. While asking defendant for his name and for identification, an officer put his hand on defendant's chest "just to create distance" while he momentarily took his eyes off defendant to look for his partner, whereupon defendant became "nervous" and began "stepping from left to right, moving around his body." Defendant's abrupt change in behavior, when added to the preceding factors,

heightened the officer's level of suspicion, justifying a frisk (*see People v Allen*, 42 AD3d 331, 332 [1st Dept 2007], *affd* 9 NY3d 1013 [2008]).

In any event, regardless of whether the frisk was lawful, it did not yield any contraband. Instead, after the frisk had been completed, the officer asked defendant what was in the bag he was carrying. This was a common-law inquiry that was, at least, supported by a founded suspicion of criminality (*see People v Hollman*, 79 NY2d 181, 191 [1992]). At that point, defendant dropped the bag (which contained a firearm) and ran. This was an independent act of abandonment, constituting a strategic, calculated decision and not a spontaneous reaction to police activity (*see People v Boodle*, 47 NY2d 398, 402 [1979], *cert denied* 444 US 969 [1979]). The abandonment was not in response to the allegedly illegal frisk, but to the clearly lawful inquiry about the contents of the bag.

Defendant's claim that his conviction violated his Second Amendment right to bear arms is without merit. At a minimum, his Second Amendment claim fails because his status as a previously convicted felon rendered him ineligible to be licensed to carry or possess a firearm (*see* Penal Law § 400.00 [1] [c]), and the Supreme Court of the United States has said that nothing in its opinion in *District of Columbia v Heller* (554 US 570 [2008]) "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" (*id.* at 626). Concur—Gonzalez, P.J., Friedman, Sweeny, Moskowitz and Clark, JJ.