Rivera, J.
(dissenting in People v Argyris and People v DiSalvo, concurring in People v Johnson). In these cases we must decide whether police have reasonable suspicion to justify a forcible stop based solely on an anonymous informant’s uncorroborated “tip” that lacks any information by which to test the reliability of the informant or the information supplied. Information from informants, in particular anonymous informants who intentionally keep their identity secret and with whom law enforcement personnel have no known prior experience, is inherently suspect. The value of an informant’s tip has always depended on the credibility of the informant and the basis of the tip information. Where, as here, an anonymous informant makes unsubstantiated assertions about illegal activity, providing only generally observable descriptive information about the individual subject of the tip, but lacking predictive information of the subject’s criminal conduct, the tip alone cannot provide reasonable suspicion for police to effect a forcible stop.
Anonymous tips, nonetheless, may advance law enforcement purposes by providing information leading to an independent police investigation. In cases where an anonymous tip is confirmed by police work and personal observation, the tip, as corroborated, may supply reasonable suspicion, which is “the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand” (People v Cantor, 36 NY2d 106, 112-113 [1975]).
In People v Moore, we held that in order to justify a forcible stop, an anonymous tip must “contain[ ] predictive information — such as information suggestive of criminal behavior — so that the police can test the reliability of the tip” (6 NY3d 496, 499 [2006]). Four members of the Court now reject Moore’s precedential standing. In turn, a bare majority, unable to choose between a totality of the circumstances analysis and a diluted version of the Aguilar-Spinelli test, concludes in a memorandum opinion that under either standard the tip in Argyris and DiSalvo supports a finding of reasonable suspicion, but the tip in Johnson is unreliable. In separate concurring opinions, two members of the majority provide rationales in support of their legal standard of choice.
*1170 It appears that my colleagues accept as a legal precept the sufficiency of an informant’s untested and unsubstantiated allegation of personal knowledge of criminal activity as a basis for a tip’s reliability. By doing so, my colleagues bolster the constitutional significance of an uncorroborated anonymous tip that provides nothing more than a self-referential statement that the informant saw some individual commit a crime. Such an approach places every member of our society at risk of police intrusions based on the flimsiest of bases, and is contrary to our prior holding in Moore. I dissent.
L
The appeals before us involve information from anonymous tipsters, persons not known to law enforcement and who seek to conceal their identity. Anonymous tipsters differ from known police informants, whose identities are not secret, and with whom police may have prior experience as reliable sources of information about criminal activity. In either case, informants, unlike police officers, “are not regarded as presumptively reliable or honest” (Illinois v Gates, 462 US 213, 277 [1983, Brennan, J., dissenting]). The case law illustrates a general concern about the use of information from informants, in particular anonymous tipsters, as a basis for police intrusions because of the ease with which anonymity facilitates false reporting (see e.g. People v Rainey, 228 AD2d 285, 287 [1st Dept 1996] [“The lack of accountability for false reports in such instances renders anonymous tips the weakest sort of information” (citation omitted)]). In contrast, a known informant’s “reputation can be assessed and [the informant] can be held responsible if [the] allegations turn out to be fabricated” (Florida v J.L., 529 US 266, 270 [2000], citing Adams v Williams, 407 US 143, 146-147 [1972]).
In order to provide a basis for probable cause to arrest, or reasonable suspicion to stop and detain the subject of a tip, courts have applied tests by which to measure the tip’s reliability. The necessary indicium of reliability demanded in these cases focus on the informant’s credibility and the basis of the tip information.
The Aguilar-Spinelli test, drawn from the United States Supreme Court’s decisions in Aguilar v Texas (378 US 108 [1964]) and Spinelli v United States (393 US 410 [1969]), as applied to probable cause determinations based on information from known informants, requires that the informant is reliable *1171 and that there is a basis for the knowledge of the informant’s tip (Spinelli, 393 US at 413, 416). To avoid unreasonable police intrusions, the informant’s basis of knowledge must be supported by details substantial enough to demonstrate that the informant is not merely relying on rumor (id.).
In both Aguilar and Spinelli, the Court found the informants’ tips constitutionally insufficient. In Aguilar, the affidavit stated only that the police were informed by an unnamed “credible person” that defendant’s home contained illegal drugs (378 US at 109). In Spinelli, the affidavit stated more, including that defendant was observed by investigators traveling repeatedly to a particular apartment that contained two telephone lines, that defendant was known to the affiant and other law enforcement agents as a bookmaker, and that an unidentified informant had stated that defendant was using the two telephones in a bookmaking operation (393 US at 413-414). Nevertheless, each failed to satisfy the threshold requirements.
In Gates, the Supreme Court abandoned the Aguilar-Spinelli test, demoting its two requirements to mere considerations in a broad “totality-of-the-circumstances” analysis (462 US at 238). There, the Court considered the reliability of an anonymous letter sent to police by mail. The letter contained specific information detailing the “future actions of third parties ordinarily not easily predicted” (id. at 245). The Court found that the anonymous letter alone was insufficient under Aguilar-Spinelli. However, police “corroboration of major portions of the letter’s predictions” provided “fair probability that the writer of the anonymous letter had obtained his entire story either from [defendants] or someone they trusted,” therefore making it apparent that the judge had a “substantial basis for . . . concluding] that probable cause to search [defendants’] home and car existed” (id. at 246 [internal quotation marks omitted]).
The Court applied the totality of circumstances analysis in Alabama v White, where it held that in order for an anonymous tip to provide reasonable suspicion to justify a vehicle stop, the tip needed some “indicia of reliability” (496 US 325, 327 [1990]). There, police received an anonymous call indicating:
“[the defendant] would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey’s Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case” (id.).
*1172 Acting on the tip, police proceeded to the Lynwood Terrace Apartments and observed a brown Plymouth station wagon with a broken taillight in front of building 235 and observed defendant enter that vehicle and proceed to drive towards Dobey’s Motel. Prior to defendant’s arrival at the hotel, police pulled her over and informed her of the accusation that she was carrying drugs. Defendant consented to the search of her vehicle and cocaine was discovered in a locked, brown attaché case (id.). Calling it a “close case,” the Court reasoned that the predictive information of defendant’s actions provided by the informant, coupled with the police surveillance and corroboration of the events predicted, supplied the necessary reasonable suspicion to justify defendant’s stop (id. at 332). The Court concluded there was no basis upon which the police could determine the reliability of the tipster or the information without independent investigation, meaning following the car and corroborating by police observations the tipster’s description of future criminal conduct. With such corroboration, the Court found the police possessed the requisite reasonable suspicion to justify the automobile stop (id.).
In Adams v Williams, the informant was known to the police officer when he approached the officer and advised him “that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist” (407 US at 145). The Court noted that the information provided was immediately verifiable and, if false, subjected the informant to immediate arrest thus making this “a stronger case than obtains in the case of an anonymous telephone tip” (id. at 146). The Court stressed, however, that “[o]ne simple rule will not cover every situation” and “[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized” (id. at 147).
In Florida v J.L. (529 US 266 [2000]), the Supreme Court clarified that to justify a forcible stop, reasonable suspicion based on an anonymous tip required predictive information of future criminal behavior. There, police officers stopped and frisked the defendant after receiving an anonymous tip that a young Black male was standing at a particular bus stop, wearing a plaid shirt and carrying a gun. Other than the fact that the defendant matched the general description provided by the informant, the officers had no reason to suspect him or his companions of illegal activity. Finding the informant’s descriptive information of defendant insufficient to satisfy the *1173 constitutional requirement for a stop and frisk, the Court stated that an anonymous tipster’s reliability would be demonstrated only if the suspect subsequently engaged in actions suggestive of concealed criminal activity, which the anonymous tip predicted in detail (id. at 271-272). That is “reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person” (id. at 272).
The Supreme Court revisited the issue of the reliability of anonymous informants in the context of a drunk driving case. In Navarette v California (572 US —, 134 S Ct 1683 [2014]), a divided Court applied the totality of the circumstances test, and concluded that while police failed to observe any criminal conduct, they had reasonable suspicion to stop the defendants based on a 911 caller’s description of defendants’ pickup truck which the caller alleged had minutes before run her off the road.[1] According to the majority, the call had sufficient indicia of reliability because the informant had been an eyewitness to the event, whereas in J.L., “the tip provided no basis for concluding that the tipster had actually seen the gun” (572 US at —, 134 S Ct at 1689). Further, the Court credited the informant with having used the 911 system, which permits tracking of calls, and which allows for prosecution of those who make false reports. Last, the Court noted that the caller reported the type of dangerous conduct that resembles drunk driving, suggesting the informant’s conclusion was correct.
Our Court has also been suspicious of informants, especially anonymous tipsters, and thus demands that the informant’s reliability be established in order to justify probable cause or reasonable suspicion. Early on we “characterized the use of anonymous information to justify intrusive police action as ‘highly dangerous’ ” (People v De Bour, 40 NY2d 210, 225 [1976], citing People v Taggart, 20 NY2d 335, 343 [1967]). Fearing the potential risks associated with false anonymous tips, we observed that
“[a] citizen walking our streets should not, without more, be exposed to physical assault by a police officer on the basis of an unsubstantiated report of the mere possession of firearms volunteered by a *1174 stranger. To condone such conduct would be to expose innocent persons to harassment by pranksters and irresponsible meddlers” (People v Green, 35 NY2d 193, 196 [1974]).
In People v La Pene (40 NY2d 210 [1976]), the companion case to De Bour, we concluded that an anonymous telephone tip, in the proper case, could provide police with reasonable suspicion to stop and frisk the subject of the tip. However, we held that the tip in La Pene, alleging only that there was a Black male inside a bar, wearing a red shirt with a gun (id. at 221), was vague and thus insufficient. We noted that it was “significant though not determinative . . . that [the tip] was garnered from an anonymous source” (id. at 224).
Even where the informant had provided reliable information in the past, we have declined to uphold a search where the police were only able to corroborate defendant’s identification, but not any details suggestive of criminal activity (People v Elwell, 50 NY2d 231, 237 [1980] [“personal police observation corroborative of data received from the informant should be regarded as sufficient only when the police observe facts suggestive of criminal activity” (emphasis added)]). We reasoned that “[otherwise privacy and liberty may be invaded by a warrant-less search or arrest based solely on the quality of the informant and not at all on the quality of the information, i.e., its suggestiveness of criminal activity” (id.). Thus, “[b]earing in mind the balance to be struck between the individual’s constitutional right to be free of official interference by way of search or arrest with society’s interest in preventing crime and apprehending criminals” (id. at 241), we concluded that
“the rule under our Constitution should be that a warrantless search or arrest will be sustained only when the police observe conduct suggestive of, or directly involving, the criminal activity about which an informant who did not indicate the basis for his knowledge has given information to the police, or when the information furnished about the criminal activity is so detailed as to make clear that it must have been based on personal observation of that activity” (id. [citations omitted]).
After the Supreme Court’s decision in Gates, we rejected the totality of the circumstances test and, as a state constitutional matter, continued to apply the Aguilar-Spinelli test to probable cause determinations involving informants. Thus, in People v *1175 Johnson, we stated that “the protection of the individual rights of our citizens [was] best promoted by applying State constitutional standards” (66 NY2d 398, 407 [1985]). Soon thereafter, in People v Griminger (71 NY2d 635 [1988]), we again adhered to Aguilar-Spinelli, observing that requiring adherence to the test would “prevent the disturbance of the rights of privacy and liberty upon the word of an unreliable hearsay informant, a danger we perceive under the Gates totality-of-the-circumstances test” (id. at 641).
Distinguishing between the two Aguilar-Spinelli requirements, we restated in People v DiFalco (80 NY2d 693 [1993]) that the informant’s basis of knowledge could be corroborated by sufficient details “suggestive of or directly related to criminal activities” (id. at 697, citing Elwell, 50 NY2d at 236). We then held that the informant’s reliability may be established by corroboration based on “independently verified details, although not of themselves criminal in nature” (id. at 699). We stressed, however, that those details “may not be merely peripheral to the reported criminal scheme; they must fit within the informant’s story of the contemplated crime as activities which are significant and essential to carrying it out” (id.). Thus, we confirmed that information suggestive of criminal activity was central to the Aguilar-Spinelli requirements, finding “[t]he separate basis of knowledge and veracity requirements of Aguilar/Spinelli are analytically independent and each must be satisfied” (id. at 697; see also Johnson, 66 NY2d at 402-403; United States v Harris, 403 US 573, 592 [1971, Harlan, J., dissenting]).
In three cases particularly relevant to the instant appeals, we imposed explicitly the predictive information requirement of J.L. to street encounters and vehicle stops. In People v William II (98 NY2d 93 [2002]), the police received an anonymous call indicating a man named “Will” had just been involved in a drive-by shooting. The anonymous informant provided a description of “Will,” as well as his location, and cautioned that he was armed. When police arrived they found defendant in a group, with another man resembling the description given by the caller; however from the manner in which defendant was dressed, the police immediately knew he was not carrying a concealed weapon. Nevertheless, the police frisked defendant and the other man. We held that “[t]he tip not only lacked predictive information that would permit the police to test the caller’s knowledge, but was also rendered suspect when directly contradicted by the police officer’s observation[s]” (id. at 99). *1176 Accordingly, we suppressed marijuana recovered from the defendant.
In People v Rodriguez, the companion case to William II, an anonymous caller described a light-skinned Hispanic male, in his twenties, with black hair, wearing a black-and-white checkered shirt and jeans and allegedly carrying a gun. Two hours later the police saw the defendant, who fit the description, entering the back of a livery cab. Police stopped the cab and as they approached, defendant allegedly dropped a handgun out of the window. We held that the anonymous tip lacked predictive information, stating “the only basis for reasonable suspicion advanced before the suppression court for stopping the vehicle in which defendant was a passenger was that he matched the physical description provided by an anonymous tipster. Without more, the tip could not provide reasonable suspicion to stop the car” (id.).
In People v Moore (6 NY3d 496 [2006]), an anonymous caller informed police that there was a dispute involving a Black male with a gun, approximately 18 years old and wearing a gray jacket and red hat. When the police arrived they saw defendant, who matched the description. As they approached, defendant started to walk away. The police caught up with defendant and, with guns drawn, subjected him to a frisk. We held that “[a]n anonymous tip cannot provide reasonable suspicion to justify a seizure, except where that tip contains predictive information— such as information suggestive of criminal behavior — so that the police can test the reliability of the tip” (id. at 499, citing J.L., 529 US 266).
In assessing the propriety of a forcible stop under our De Bour framework, we discussed the liberty interest at risk from investigatory stops based on anonymous tips. We observed,
“the very right to be let alone — the right of citizens not to be stopped at gunpoint by police, based on anonymous tips — is the distinguishing factor between the level of intrusion permissible under the common-law right of inquiry and the right to stop forcibly . . .
“. . . Under our settled De Bour jurisprudence, to elevate the right of inquiry to the right to forcibly stop and detain, the police must obtain additional information or make additional observations of suspicious conduct sufficient to provide reasonable *1177 suspicion of criminal behavior” (Moore, 6 NY3d at 500-501 [citations omitted]).
IL
Central to these cases are the requirements of reliability of the anonymous informant and the credible basis for the tipster’s information. Testing the reliability of the informant addresses whether the informant is truthful, and not motivated to fabricate. Confirming the tipster’s information reflects a principal concern that the information about criminal activity be based on facts and data which make it likely to be accurate.
Whether under the Aguüar-Spinelli test for probable cause, or the less demanding reasonable suspicion standard, the courts seek to ensure a tip is reliable in order to avoid police intrusions based on suspicion and rumor, or fabricated report of illegality. Unlike a known informant, an anonymous informant has no history with law enforcement, and no track record of having provided reliable information in the past. Deprived of the informant’s identity, the police have no basis upon which to conclude that the tipster may be trusted. As the courts have recognized, such tips carry the real possibility that individuals will be subjected to police intrusions on the basis of false information by someone who may escape prosecution. Thus, there is every reason to carefully scrutinize the anonymous informant and the tipster’s information, and to require corroboration that provides a basis for an officer’s supported belief of criminal conduct, taking into account that the source of the information is unknown and untested. Whether the inquiry is to confirm the existence of probable cause for a search or an arrest, or the reasonable suspicion to stop and detain, the tip must have an indicium of reliability.
Reliability may be provided by any number of factors external to the informant (see White, 496 US at 332 [police observation of predictive details evincing the criminal behavior the tip predicted]; People v Cobb, 208 AD2d 453 [1st Dept 1994] [police observation of illegality]). Reliability may also be provided by the contents of the tip (see e.g. White, 496 US at 328 [substance of the anonymous tip contained sufficient indicia of reliability to justify reasonable suspicion to stop defendant]). However, as relevant to these appeals, we made clear in Moore that in order to provide reasonable suspicion to justify a forcible stop, an anonymous tip must contain predictive information of criminality (6 NY3d at 499). It is just that simple and just that important.
*1178 The requirement that an anonymous tip must contain predictive information ensures that police act based on information that provides a basis for believing the informant is truthful and the tip has a basis in facts and circumstances that reveal criminal activity. This requirement properly balances fundamental constitutional rights of liberty and privacy against concerns about public safety and efficient law enforcement. A predictive information requirement benefits the individual and society by protecting cherished freedoms against what Justice Douglas described as the “powerful hydraulic pressures throughout our history that bear heavily on the [courts] to water down constitutional guarantees” (Terry v Ohio, 392 US 1, 39 [1968]), while also permitting law enforcement to deploy investigative techniques based on experience with informants, with due regard to the practical realities and demands of policing, especially in matters involving fast-paced street encounters.
In an effort to avoid the underlying rationale of our prior approach, the majority claims in Argyris and DiSalvo that the tip’s lack of predictive information is not fatal (majority mem at 1141). My concurring colleague, Judge Abdus-Salaam, goes so far as to describe as dicta Moore’s legal rule statement that an anonymous tip must contain predictive information before the tip may serve as reasonable suspicion to justify a De Bour level three seizure (see concurring op of Abdus-Salaam, J. at 1153-1154). Indeed, she expounds on this conclusion, arguing that the actual grounds for our decision in Moore were “numerous other aspects of the tip” that showed it was not credible (id. at 1153). This is a revisionist interpretation of Moore and one which distorts this Court’s central unambiguous holding that “the tip did not provide any predictive information” (Moore, 6 NY3d at 499). In fact, there are no so-called “numerous” references to credibility problems to be found anywhere in the opinion, only this Court’s conclusion that in addition to lacking predictive information, the tip failed to provide accurate descriptive information by failing to correctly portray the unfolding events at the scene.
Judge Abdus-Salaam advocates for the adoption of the two-pronged Aguilar-Spinelli test. If she, in fact, adhered to the actual Aguilar-Spinelli test I might join her opinion, given that before today the Aguilar-Spinelli test imposed a higher standard than what has usually been necessary to establish reasonable suspicion in support of an investigatory stop.
However, the long-standing Aguilar-Spinelli test is not what my concurring colleague promotes. Instead, she embraces a *1179 modified version of this test, resting the reasonable suspicion determination “on the quality of the tip’s description of the crime itself” (concurring op of Abdus-Salaam, J. at 1144) without the need for predictive information of criminal activity. This is merely “Aguilar-Spinelli lite,” excised of the core protective benefits that underlie the original test, and diluting its most salient requirements.
As described, it allows police, on a simple allegation that someone saw somebody do something, to stop anyone, regardless of age or physical condition; at any time, day or night; at any place, whether walking on a public street, sitting in a car, or entering one’s home or place of employment. No quotidian moment escapes potential police intrusion. The most basic and innocuous of chores and activities, such as commuting to work or school, purchasing food at the market, waiting at the laundromat, standing in line at the post office, visiting the library, browsing through records and books, or circling the neighborhood in a car looking for parking for what seems like an interminable length of time, may serve as the basis for an anonymous informant to claim criminal activity. So long as the informant claims to have been an eyewitness to a criminal act, the tip need not provide even a modicum of reliability as to the alleged illegality, even though the tip is communicated outside the physical presence of law enforcement personnel, asserted by an unknown individual who is unwilling or unable to provide identifying information, such as a telephone number, and whose veracity is unproven and unconfirmed.
The People in Argyris and DiSalvo claim that predictive information is unnecessary because of the anonymous informant’s alleged personal observations of the claimed criminal activity. As this argument goes, the informant is reliable because in addition to describing the car and the defendants, the informant said that he saw one of the men put a gun in the back of the car.
My concurring colleague agrees, and offers four grounds to support her conclusion (see concurring op of Abdus-Salaam, J. at 1157-1162). First, as the People here contend, predictive information is but one way to establish basis of knowledge under the Aguilar-Spinelli test. As such, an anonymous informant may establish basis of knowledge by a statement of personal observation of illegal conduct, as is the case in these appeals.
The appropriate response to the People’s argument is that of the dissent in Navarette to a similar claim of alleged personal *1180 observation. Reacting to the Navarette majority’s assertion that the informant claimed to have been run off the road and therefore had eyewitness knowledge, Justice Scalia remarked, “So what?” (Navarette, 572 US at —, 134 S Ct at 1693 [Scalia, J., dissenting]). For, “[t]he issue is not how [the informant] claimed to know, but whether what [the informant] claimed to know was true” (id.). To that question, “[t]he claim to ‘eyewitness knowledge’ . . . supports not at all its veracity” (id.).
A simple example, comparing a tip from an informant who claims to have personal eyewitness knowledge to alleged gun possession, with a tip from an informant who makes no such assertion, reveals the strained logic of the argument. A self-referential statement of eyewitness observation of criminal activity, summed up in the words “I saw a gun,” sheds no greater light on whether the informant is to be trusted and the tip relied upon, than does the same statement, from the same informant, but without the claim of having seen a weapon. In both scenarios, the police have only the informant’s word as to what occurred, and no way to confirm it, without engaging in independent police investigation.
Accepting self-verification based on no more than the informant’s bald unsubstantiated assertion goes against common sense because such statement proves nothing and adds nothing to the reliability analysis. It does, however, increase the risk of police intrusions based on fabricated information by legitimating police action that is based on an anonymous tip that says nothing more than “I saw something so I said something.”[2]
My colleague’s second ground for rejecting a requirement of predictive information is that the requirement supposedly fails to assist police in testing the truthfulness of the informant’s account of the criminal activity prior to taking action against the subject of the tip. Yet, the fact that an anonymous tip may not provide police with reasonable suspicion of criminal activity is the very reason why courts demand more than unsubstantiated assertions from unknown persons. As has been the case for decades, where police receive an anonymous tip the police may *1181 determine, based on the content of the tip and police experience and expertise with anonymous informants, whether and how to follow up on the anonymous information. If, by independent investigatory police work and their personal observations, the police corroborate the readily observable, innocuous noncriminal information provided by the informant, and also confirm the basis for the informant’s allegations of criminal activity, such that the police “believe criminal activity is at hand,” the police may conduct an investigatory stop. If the police fail to confirm the tip, even under the lower threshold of reasonable suspicion, then they may not act. The fact that the police may be unable to corroborate an anonymous tip is a consequence of our society’s choice to protect constitutional rights.
The third ground asserted is that predictive information will not eliminate the risk that malicious tipsters will fabricate reports of criminal activity, and may very well increase that risk. The reason being, that those most likely to have predictive information are those closest to the tipster’s target, and they are as likely as anyone else to make up a story. Moreover, where the informant bears personal animosity towards the target, the informant may be motivated to lie. This is pure speculation and conjecture. The reality is that the tests for constitutional sufficiency of informant tips seek to reduce the possibility of fabrication by requiring information that is intended to permit police and courts to weed out the genuine tips from those motivated by a personal agenda. Police have a long history of distinguishing the malevolent from the honest informant. That task is made harder when the informant is anonymous, and thus requires that police have information to assist them in determining what is a genuine source of reliable information.
As a fourth ground, my colleague asserts that a predictive information requirement would place an excessive restraint on law enforcement, imperiling public safety. Of course, we do not want to interfere unduly with police work. The concern as explained, however, sounds like fearmongering. Even if members of the general public who observe a crime have no way of knowing what the subject of the tip will do and cannot provide predictive information, that does not mean, as posited, that serious crimes would go unpunished. Unlike my colleague I place my confidence in a law enforcement system that relies on the work of police officials, trained and experienced in investigatory techniques, familiar with the street hustles and the fake claims of imminent danger, rather than in unsubstantiated tips from anonymous persons.
*1182 Despite claims that the only way to avoid endangering the public and prevent the erosion of law enforcement is to cede our hard-fought rights to liberty and privacy, the truth is just the opposite. Police intrusion based on untested and uncorroborated claims of criminal conduct does not safeguard the public or encourage effective law enforcement. I reject the premise that it is simply too difficult for law enforcement to do what they are trained to do, and that it is too much to expect that those charged with protecting us will do so by applying their skills in accordance with constitutional and statutory requirements.
My concurring colleague, Judge Smith, opposes the application of the Aguilar-Spinelli test, and in its stead would apply the totality of the circumstances test (concurring op of Smith, J. at 1141, 1143). However, we rejected that federal approach in Johnson, finding our state constitutional standards better protected individual rights (see 66 NY2d at 407). That assessment of the totality test is still applicable today and I see no reason to reconsider and resuscitate a standard buried long ago.
III.
Some states and law enforcement have argued for years that tips about illegal guns should be treated differently, and absolved of the usual constitutional requirements of reasonable suspicion and probable cause (see e.g. J.L., 529 US at 271). We have never, at least until now, found support in fact or logic for such an exception to the general rule that police intrusions of liberty require a showing of reasonable suspicion to support an investigatory stop, or probable cause for a search and an arrest.
In J.L., the Supreme Court rejected such entreaties to carve out a “firearm exception” that would permit a stop and frisk based on a tip that would not otherwise provide a constitutionally justifiable basis for the stop (id. at 272). After recognizing that “[fjirearms are dangerous, and extraordinary dangers sometimes justify unusual precautions” (id.), Justice Ginsburg noted that the Terry rule sought to address these concerns by permitting a protective police search based on reasonable suspicion rather than probable cause. She then stated
“an automatic firearm exception to our established reliability analysis would rove too far. Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target’s unlawful carriage of a gun” (id.).
*1183 She also recognized the difficulty of cabining such an exception to firearm prosecutions because, as Federal Circuits Courts of Appeals have found, it is “foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well” (id. at 273 [citations omitted]). She continued:
“If police officers may properly conduct Terry frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain [based on the case law] that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indicia of reliability critical in Adams and White, the Fourth Amendment is not so easily satisfied” (id., citing Richards v Wisconsin, 520 US 385, 393-394 [1997] [rejecting a per se exception to the “knock and announce” rule for narcotics cases partly because “the reasons for creating an exception in one category [of Fourth Amendment cases] can, relatively easily, be applied to others,” thus allowing the exception to swallow the rule]).
My colleagues go further because they would apply the totality of circumstances or Aguilar-Spinelli tests to all investigatory stops, not just those involving guns. Such approach risks the further watering down of rights in the future.

m

Turning to the instant appeals, in Argyris and DiSalvo, I would find that the anonymous tip lacked the indicia of reliability necessary to support reasonable suspicion to forcibly stop defendants. The informant provided descriptive information of the defendants, the car and van and the route they were taking when he last observed them. This information was readily observable to anyone on the street. The tip lacked predictive information as to the criminal activity alleged because the informant stated only that he had seen one of the men put a gun in the back of the car. Without more, the tip lacked information to establish the reliability of the allegation of gun possession.
To the extent my colleagues accept the veracity of the anonymous informant based on the informant’s word they ignore the primary lessons of federal and state cases that anonymous tips are inherently suspect and cannot, on their own, serve as a basis for police intrusions. Equally unavailing is my concurring *1184 colleague’s assertion that “[b]y claiming personal knowledge, the tipster puts his or her own credibility on the line rather than seeking to hide behind a secondhand hearsay source” (concurring op of Abdus-Salaam, J. at 1163). This completely fails to comprehend that because the informant is anonymous, there is no way to assess credibility unless the tip contains predictive information that affords police the ability to corroborate the substance of the tip. An anonymous source, immune from prosecution for false statements, places nothing “on the line.”
Here, because the tip on its own was insufficient to provide reasonable suspicion, the police were left to investigate and determine whether additional information confirmed the tip. This is what several officers did, and this was good police work because they were able to corroborate the descriptive information by personal observation. However, before they could corroborate the allegation of gun possession Officer Valles stopped defendants’ car at gunpoint. As the record makes clear, the only information known to Officer Valles when he initiated the stop was the contents of the tip: the descriptive information and the bare assertion of the presence of a weapon. Plainly, at this point, the police lacked reasonable suspicion to forcibly stop defendants’ vehicle. Therefore, despite the majority’s conclusion otherwise, there is no record support for the finding below (see majority mem at 1140). Indeed, even under a totality of the circumstances analysis, there are too few details in the aggregate to support a finding of reasonable suspicion (see id.-, see also concurring op of Smith, J. at 1143). As a consequence, the subsequent search was unlawful and the evidence seized during the course of the search should have been suppressed (see William II, 98 NY2d at 100).
The anonymous tip in Johnson is also constitutionally deficient because it too lacked predictive information about the alleged criminal activity of driving while intoxicated, and the police failed to observe conduct that would suggest the tip was reliable. Based on slightly different legal grounds I agree with the majority that County Court should be reversed and the motion for suppression granted. I, therefore, concur in the result.
V
My colleagues accept a standard below any constitutional floor this Court has ever recognized. In so doing they reject Moore without legal justification or good reason. They also conveniently disregard our long-standing interpretation of our *1185 State Constitution’s expansive protections (see e.g. People v Weaver, 12 NY3d 433, 445 [2009]), and ignore the concerns about anonymous informants expressed in our prior case law. In my opinion, we must remain ever mindful of this Court’s statement in Elwell, regarding the power of the State to arrest, and which applies with equal force to lesser police intrusions, that reliance “on mere suspicion collides violently with the basic human right of liberty. It can be tolerated only in a society which is willing to concede to its government powers which history and experience teach are the inevitable accoutrements of tyranny” (Elwell, 50 NY2d at 236 [citation omitted]). I dissent.
In People v Argyris and People v DiSalvo: Order affirmed, in a memorandum.
Judges Graffeo, Smith, Pigott and Abdus-Salaam concur; Judge Smith in a separate concurring opinion in which Judge Pigott concurs and Judge Abdus-Salaam in a separate concurring opinion in which Judge Graffeo concurs; Judge Read dissents in an opinion; Judge Rivera dissents in a separate opinion in which Chief Judge Lippman concurs.
In People v Johnson: Order reversed, defendant’s motion to suppress granted and accusatory instrument dismissed, in a memorandum.
Judges Graffeo, Smith, Pigott and Abdus-Salaam concur; Judge Smith in a separate concurring opinion in which Judge Pigott concurs and Judge Abdus-Salaam in a separate concurring opinion in which Judge Graffeo concurs; Judge Read concurs in result in an opinion; Judge Rivera concurs in result in a separate opinion in which Chief Judge Lippman concurs.

. It appears that the informant did in fact give her name, but the prosecution failed to produce either the informant or the dispatcher who received the call at the hearing and, thus, the Court was inclined to treat the caller as anonymous (see Navarette, 572 US at — n 1, 134 S Ct at 1687 n 1).

. The anonymous informant in Argyris and DiSalvo used this phrase when speaking to the 911 operator, apparently a reference to public service announcements encouraging members of the general public that “if you see something, say something” as a response to suspicious items or activities (see generally If You See Something, Say Something, http://web.mta.info/mta/ security/ [accessed Nov. 13, 2014]).