OPINION OF THE COURT
David Goldstein, J.
This is an ex parte submission by defendant of a judicial subpoena duces tecum, directed to the attorney who represented his wife in a Family Court proceeding, for the production of the attorney’s file, including "all reports, records, documents and correspondence.”
Defendant is charged with murder in the second degree, manslaughter in the first and second degrees, tampering with physical evidence and unlawful disposal of a body without a permit, emanating from the death of his six-day-old infant son on August 10, 1990. After police had been summoned to investigate a report of a missing child, an investigation led to an autopsy of defendant’s German Shepherd, which, in turn, disclosed that portions of the infant had been ingested by the animal.
In his supporting memorandum, defense counsel claims that, although, initially, the child’s mother, Linda Boyce, stated that she did not know how her son had died, but believed that the dog was responsible, a police detective testified at a prior hearing that the mother admitted having watched defendant cut the child.
Based primarily upon that discrepancy, it is contended that it would be appropriate to order the attorney who represented the wife in the Family Court proceeding to produce his entire file for an in camera inspection in order to determine if the file contains any Rosario (People v Rosario, 9 NY2d 286) or Brady (Brady v Maryland, 373 US 83) material. This argument is made, notwithstanding that none of the documents, if there be any which are either relevant or material, are in the possession or control of the District Attorney, a necessary prerequisite to the obligation under either Rosario or Brady. Moreover, inasmuch as no firm trial date has been set, it is fairly clear that defendant is seeking to employ the service of a subpoena duces tecum as a disclosure device, not to secure evidence for use at trial.
*556 The Criminal Procedure Law sets forth in article 240 the scope and procedure for discovery in a criminal prosecution. Generally, disclosure is a matter between the parties, without resort to the court, unless or until there has been a failure or refusal to produce pursuant to a demand served pursuant to CPL 240.20 or 240.30 (CPL 240.40), or a protective order is sought (CPL 240.50). Neither those provisions nor CPL article 610, dealing with subpoenas and subpoenas duces tecum, reflect a legislative design that subpoenas be used as a discovery device. CPL 240.20 and 240.30, relating to discovery, both refer to service of a "demand to produce” and CPL 610.10 refers to service of a subpoena to compel the attendance of one "as a witness.”
Plainly, the latter contemplates the attendance of a witness to testify and not merely to obtain discovery or to ascertain the existence of evidence (see, People v Gissendanner, 48 NY2d 543, 551; Matter of Constantine v Leto, 157 AD2d 376, 378; People v Ramirez, 129 Misc 2d 112; see generally, People v Ramgoolam, NYLJ, Jan. 2, 1992, at 24, col 2 [Sup Ct, Kings County, Gerges, J.]). Nor may the compulsory process of the court, through service of a subpoena or subpoena duces tecum, be used as a fishing expedition for discovery or to ascertain the existence of evidence (see, People v Robinson, 87 AD2d 877, 878; People v Morrison, 148 Misc 2d 61, 68).
Nevertheless, in either civil or criminal matters, where production is sought from a nonparty witness, or one not a party to the proceeding, the service of a subpoena, together with a notice to produce or notice of deposition, whatever the case may be, is the only available procedure, in terms of jurisdiction, to compel the attendance and appearance of a witness.
CPLR 3101 (a) (4) sets forth the operative procedure to obtain disclosure from such a nonparty witness and, since there is no corresponding CPL provision, in terms of procedure, it is applicable to both civil actions and criminal proceedings (CPL 60.10).
Prior to 1984, when the statute was amended (L 1984, ch 294, § 2, eff Sept. 1, 1984), CPLR 3101 (a) (4) authorized disclosure from a nonparty "where the court on motion determines that there are adequate special circumstances.” Applying the express language of the statute, it was held that the approved practice was to initially move for a court order for leave to serve a subpoena and notice of examination so that *557 the court could determine, in the first instance, if there were "adequate special circumstances.” (Slabakis v Drizin, 107 AD2d 45, 47; Post v Merrill Lynch, Pierce, Fenner & Smith, 79 AD2d 558; Bonito Mar. Corp. v St. Paul Mercury Ins. Co., 68 AD2d 864 [Fein and Lynch, JJ., concurring]; Kurzman v Burger, 98 Misc 2d 244.) This procedure was favored since the alternative, i.e., immediate service of a subpoena and notice of disclosure on the nonparty witness, without a prior application for leave, would impose an unwarranted burden on the nonparty witness of having to retain counsel and then move to quash.
The "special circumstances” standard posed only a nominal obstacle in terms of discovery, since courts which had considered the issue held that "adequate special circumstances” is satisfied by a showing by the attorney that he needed the examination or disclosure to prepare for trial (New England Mut. Life Ins. Co. v Kelly, 113 AD2d 284, 288; Villano v Conde Naste Publs., 46 AD2d 118, 120; Kenford Co. v County of Erie, 41 AD2d 586). As was recognized by the Appellate Division, Second Department, in Sherwood v Lilly & Co. (36 AD2d 533): "Knowledge exclusively possessed by prospective witnesses, touching liability and damages, combined with their refusal to speak except by force of subpoena, establishes the special circumstances required for a disclosure pursuant to CPLR 3101”.
This same liberal construction applies in terms of "special circumstances” under the current CPLR 3101 (a) (4), which, essentially, requires an adequate demonstration of a legitimate basis for the requested examination or disclosure (see, Slabakis v Drizin, supra, at 48; see also, Matter of New York County DES Litig., 171 AD2d 119, 123; Dioguardi v St. John’s Riverside Hosp., 144 AD2d 333, 334; New England Mut. Life Ins. Co. v Kelly, supra; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:23, at 35-36). The current statute, while it does not contain the same "special circumstances” language as the former provision, authorizes discovery as to a nonparty witness "upon notice stating the circumstances or reasons such disclosure is sought or required.” Although there is no reason to depart from the liberal approach to disclosure under the prior statute, the Appellate Division, Second Department, has held that the absence of the required statement setting forth the "circumstances or reasons such disclosure is sought or required” renders the notice facially deficient (see, Bigman v Dime Sav. *558 Bank, 138 AD2d 438, 439). Inasmuch as the proposed subpoena here does not contain the required statement, to that extent, it is defective.
Aside from this deficiency, and the failure to include the notice contemplated by CPLR 3101 (a) (4), in my view, under the unusual circumstances of this case, bearing in mind the nature and scope of disclosure which is sought and, notwithstanding the procedure approved by CPLR 3101 (a) (4), this case more appropriately lends itself to an application on notice to all interested parties, in advance of service on the nonparty of a notice and subpoena. In the first place, defense counsel has made no showing to in any way reflect how he knows or has a good-faith basis to believe that the nonparty in fact has or may have relevant and material evidence, within the bounds of a notice to produce. In the absence of such a showing, the conclusion is inescapable that this is the type of wholesale fishing expedition condemned in both People v Robinson (supra) and People v Morrison (supra).
This is especially critical in this case, where what is sought to be examined is shielded and protected from disclosure by the attorney-client privilege (CPLR 3101 [b]; 4503), an absolute privilege which can only be waived by the client. Whether or not counsel can obtain an in camera inspection on the naked assertion that some of what is in the requested documents may not be within the privilege, is doubtful. In any event, in view of the seriousness of the legal issue raised by the breadth and scope of the proposed subpoena, the matter should be addressed only after affording all interested persons a right to be heard, with an opportunity to fully brief and argue the issue. This, in turn, should be done only after defendant has made a proper and adequate showing and statement to demonstrate that there is a good-faith basis for the requested disclosure, sufficient to demonstrate that this is not merely a fishing expedition.
The direction of such a procedure is within the court’s power and discretion in terms of its supervision and regulation of the conduct of disclosure. Although no longer the approved statutory procedure, it is appropriate here in order to allow all sides to properly address the critical issues raised in terms of the scope of the attorney-client privilege in relation to defendant’s right to confrontation and the privacy interests of the witness. It would also give due deference to the attorney from whom such disclosure is sought, by permitting him, within the confines of his own individual practice, to *559 respond on the merits to an appropriate application, addressed to the issue, in lieu of being compelled by the time constraints of a more immediate response to a subpoena, which could carry with it, in terms of enforcement, the contempt power of the court.
Further, it would permit defense counsel an opportunity to formulate (which has not been done on this application) how any such information, within the wife’s attorney’s possession or control, could possibly constitute either Rosario or Brady material, which, by its very nature, refers to matter in the possession or control of the People. It has been consistently held that the People’s Rosario obligation is limited to material in their possession or control (see, People v Flynn, 79 NY2d 879; People v Tissois, 72 NY2d 75, 78; People v Fishman, 72 NY2d 884, 886; People v Reedy, 70 NY2d 826, 827). People v Reedy (supra) is instructive, since that case involved an attempt by defendant to obtain a copy of a written account of the attack, personally made by the victim, a free-lance writer, only two days after he had been attacked in Central Park. Defendant conceded that the account was neither Rosario nor Brady material. The Court of Appeals agreed that "the People bear no burden in this procedural and factual context to supply this material at all inasmuch as it was not in their possession or control and the victim objected to turning it over based on personal privacy rights.” (Supra, at 827.)
To the extent that defendant is suggesting that Rosario or Brady ought to be extended to have a broader application, so as to impose upon the District Attorney an independent obligation to ascertain the existence and whereabouts of statements and exculpatory matter, no case has so held. In fact, the most recent decisions and expressions of opinion by the Court of Appeals reflect just the opposite, that there is no such duty (see, People v Flynn, supra; People v Tissois, supra; People v Fishman, supra; People v Reedy, supra). In any event, so novel a theory ought to be presented on a full and adequate record, with proper and complete briefs addressed to the issue, which has not been done here.
Accordingly, the court declines to sign the proposed subpoena duces tecum, without prejudice to defendant proceeding by application on appropriate notice to all interested persons, supported by proper papers, and on a showing consistent with the foregoing opinion.