*571 OPINION OF THE COURT
Steven M. Statsinger, J.
In an oral ruling, this court held that, where the sworn portion of a domestic incident report (D.I.R.) referred to the assailant only as “he,” and did not name him, the D.I.R. did not convert the misdemeanor complaint against this defendant into an information. By written motion, the People now move for leave to reargue this point.
After carefully surveying the relevant precedent, this court concludes that: (1) CPLR 2221 (d), which authorizes motions for leave to reargue in civil cases, does not apply in a criminal case. However, the court also concludes that: (2) a trial court in a criminal case has the inherent power to grant leave to reargue, but that power should be exercised sparingly. Finally, (3), for the following reasons, while the court grants the People leave to reargue, on reargument, the court (4) adheres to its original ruling.
I. Factual Background
A. The Allegations
According to the misdemeanor complaint, the complainant told Detective Francis Brennan that, on September 16, 2014, defendant grabbed the complainant by the throat and threw her to the ground, then kicked her in the ribs. Brennan also reported that the complainant told him that defendant’s actions caused substantial pain.
B. Legal Proceedings
Defendant was arrested on February 15, 2015, and arraigned on a misdemeanor complaint charging him with two counts of assault in the third degree, and one count each of criminal obstruction of breathing or blood circulation, attempted assault in the third degree, and harassment in the second degree. The court set bail and adjourned the case for conversion.
On February 20, 2015, the People filed and served a D.I.R. in lieu of a supporting deposition. As described in more detail below, the court concluded that the D.I.R. did not convert the misdemeanor complaint into an information, and released the defendant pursuant to CPL 170.70.
At the next calendar call, on March 12, 2015, the People asked the court to reconsider that ruling. A different judge was in Part D that day, and he adjourned the case to March 16. On March 16, this court refused to entertain the request, noting *572 that any such motion would have to be in writing and on notice to the defense.
The People filed the instant written motion for leave to reargue on March 24, 2015, and the matter has been sub judice since then.
C. The D.I.R. and the Court’s Ruling
The D.I.R. is a two-page document. The first page, completed by a police officer, is dated September 16, 2014. Amongst other information, it identifies the complainant and contains the officer’s summary of what is alleged to have occurred. It also identifies the “suspect” as “DeFreitas, Jemeil,” and contains, inter alia, his telephone number and date of birth. The first page of the D.I.R. is unsworn.
The second page of the D.I.R. is styled as a “STATEMENT OF ALLEGATION/SUPPORTING DEPOSITION.” On the D. I.R. at issue, that page is dated September 16, 2014, and is subscribed to and verified by the complainant, Shaniqua Hale. There is a large box at the top of the page that says “Suspect Name (Last, First, M.I.),” but that box has been left blank. The narrative portion, which is handwritten, presumably by Ms. Hale, provides, in its entirety that “[h]e grabbed my throat and pushed me to the ground. I have a scratch on my hand and my neck and bruised [sic] on the inside of my lips.”
In concluding that the D.I.R. did not convert the misdemeanor complaint, the court made two pertinent rulings. First, it held that the first page of the D.I.R., which was completed by a police officer, could not be considered, since it was hearsay. Second, the court held that Ms. Hale’s own statement, which was not hearsay, did not convert the misdemeanor complaint because it did not identify her assailant.
II. Discussion
Whether and when to grant a motion for leave to reargue a legal ruling in a criminal case is a complex and difficult question. As described below, there is conflicting precedent on a court’s authority to do so, and there are compelling policy reasons to avoid needlessly delaying the progress of a criminal case by revisiting legal issues that can be addressed by an appellate court, if necessary, once the case is over. Nevertheless here, the court concludes that it has the inherent power to grant leave to reargue, and that granting leave to reargue is appropriate. However, on reargument, the court adheres to its original ruling.
*573 A. Motions for Leave to Reargue
This case first calls upon the court to consider whether a motion for leave to reargue lies in a criminal case. The Criminal Procedure Law does not contain any provision for motions for leave to reargue. Rule 2221 (a) and (d) of the CPLR do provide for such a motion, but for the following reasons, the court concludes that CPLR 2221 was never intended to apply in a criminal case and that it, in fact, does not. However, the court also concludes that the trial court in a criminal case has the inherent power to grant leave to reargue, but that this power should be exercised sparingly.
1. CPLR 2221
a. Confusing and Inconclusive Precedent
As noted above, rule 2221 (a) and (d) of the CPLR set out the procedures and timing requirements for motions for leave to, inter alia, reargue in civil cases. But the appellate cases addressing whether that rule should be applied in criminal cases, while somewhat inconsistent, ultimately persuade this court that a motion for leave to reargue under CPLR 2221 does not lie in a criminal case.
Most pertinent is People v Silva (122 AD2d 750, 750 [1st Dept 1986]), which held that “the CPLR has no application to criminal actions and proceedings.” That Court reached the same conclusion in People v Crisp (268 AD2d 247 [1st Dept 2000]). There, citing Silva, the Court held that
“defendant’s arguments [are] unavailing with regard to the applicability of CPLR provisions to this criminal proceeding. This is especially true in the absence of any express reference to the CPLR in CPL 190.50 (5) and in view of the Court of Appeals’ practice of interpreting CPL provisions in accordance with the CPL’s statutory scheme and without resort to the CPLR.” (Id. at 247; see also People v Holden, 260 AD2d 233, 234 [1st Dept 1999] [“The time set forth in CPLR 2214 (b) for answering a motion was not applicable” in a criminal case].)
These First Department cases are binding on this court, and would appear to close the door. Frustratingly, however, and more recently, that same Court, in People v Godbold (117 AD3d 565, 566 [1st Dept 2014]), noted that a trial court had “discretion to entertain” a motion to renew under CPLR 2221 (e). But Godbold turned on the timing of the 2221 (e) motion — that is, *574 the court noted the trial court had discretion to consider an out-of-time motion — and does not seem to have squarely presented the question of whether a CPLR 2221 (e) motion to renew was permitted in a criminal case at all. (Id.) Even despite Godbold, then, it would appear strongly that the weight of binding precedent requires this court to conclude that a motion for leave to reargue under CPLR 2221 does not lie in a criminal action.
That said, however, the court would be remiss on this important question if it did not dig further. The court notes, first, People v Mason (15 Misc 3d 143[A], 2007 NY Slip Op 51121[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]), which observed that CPLR 2221 permits a court to reconsider a prior ruling as to a sex offender’s risk classification because those proceedings “have been treated as civil, rather than criminal, in nature.” This would further suggest that the rule does not apply in a criminal case. On the other hand, in People v Oceanside Institutional Indus., Inc. (15 Misc 3d 22 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]), that same court concluded that the trial court in a criminal case properly exercised its discretion by granting the People not one, but two motions for leave to reargue under CPLR 2221 (d). In other words, these Appellate Term cases do not do much to resolve this issue.
Finally, most trial courts that have considered the question have held that CPLR 2221 applies in a criminal case, although generally without much analysis. Most recently, in People v Bueno (46 Misc 3d 1224[A], 2015 NY Slip Op 50276[U], *1 [Sup Ct, Bronx County 2015]), the court noted the above-cited language in Silva, but nevertheless found that it was “constrained to follow” the CPLR. Citing other trial court decisions, Bueno concluded that “where there are no applicable provisions in the CPL concerning the issue at hand, those provisions of the CPLR that address the issue may be applied in a criminal action.” (2015 NY Slip Op 50276[U], *1; see also e.g. People v Borzon, 47 Misc 3d 914 [Sup Ct, Bronx County 2015]; People v Sanad, 47 Misc 3d 783 [Crim Ct, Bronx County 2015].)
For the reasons below, however, this court respectfully disagrees with Bueno and with the other courts that have held similarly.
b. Statutory Interpretation and Policy Considerations
There are both statutory and policy reasons for concluding that CPLR 2221 does not apply in a criminal case.
*575 CPLR 101 provides that the CPLR “shall govern the procedure in civil judicial proceedings in all courts of the state,” and does not provide that the CPLR will also apply in criminal proceedings. At the same time, CPL 1.10 (1) (a) provides that “the provisions of this chapter” — that is, those of the CPL— shall apply “exclusively to,” inter alia, “ [a] 11 criminal actions and proceedings commenced upon or after the effective date thereof.” This seems to indicate that the legislature intended to exclude the provisions of the CPLR from criminal cases, even though, in context, the word “exclusively” is ambiguous. It could mean that the provisions of the CPL are the only provisions that apply in criminal cases, which would suggest that provisions of the CPLR do not. Or, it could mean that the provisions of the CPL apply only in — that is, “exclusively” in— criminal cases and in no other type of cases, which would leave open the possibility that provisions of the CPLR might also apply in criminal cases.
The Practice Commentary to this section, however confirms that the first of these two readings, the one excluding the CPLR from criminal cases, is the correct one. That Commentary describes the CPL as “the exclusive governing body of law in . . . criminal actions and proceedings.” (Peter Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 1.10 at 10.) The Commentary goes on to note that “special proceedings defined in the CPLR, though they may intimately affect criminal actions, proceedings and procedure, such as habeas corpus (CPLR Art. 70), mandamus and prohibition, are governed by the CPLR and not the CPL,” further suggesting that the first of these possibilities — the CPLR is only for civil cases and its provisions do not apply in criminal cases — is correct. (Id.)
Further supporting this view is CPL 60.10, which expressly provides that “the rules of evidence applicable to civil cases are, where appropriate, also applicable to criminal proceedings.” This demonstrates that the legislature knew how to incorporate by reference specific provisions of the CPLR into the CPL. Section 60.10 accordingly bolsters, by negative implication, the conclusion that the legislature did not intend to import CPLR 2221 into the CPL.
As to policy, it is likely that the legislature had sound reasons for developing a body of procedural rules governing criminal actions that did not provide for an unfettered right to seek re-argument or reconsideration of trial court orders. Given the *576 huge volume of criminal cases and the compelling need for them to move with alacrity — so that witness memories do not fade, evidence does not evanesce, and incarcerated defendants do not languish in jail for needlessly prolonged periods — the legislature might well have deemed it preferable for an appeal of the final judgment at the very end of the case to be the primary mechanism by which a disputed trial court ruling might be reviewed. Indeed, CPL 450.10 identifies five categories of cases in which a criminal defendant has an appeal as of right, and all of them describe situations where there has been a final order.
Limiting review of trial court decisions to final judgments on appeal serves two important ends. First, it avoids unnecessary delays in criminal actions and, second, it avoids the need to go back over legal disputes that, although they seemed important at the time, were ultimately rendered moot by the final outcome of the case. All this would therefore suggest that the legislature’s decision to leave out from the CPL provisions for motions for leave to reargue was deliberate, and that the legislature did not intend that the provisions of the CPLR permitting them would be imported to criminal cases.
B. The Court’s Inherent Power
Although the court concludes that a motion for leave to reargue under CPLR 2221 does not lie in a criminal case, the court also concludes that a trial court’s inherent power to correct its own mistakes includes the power to grant leave to reargue, where appropriate.
Several courts have identified specific issues that a trial court in a criminal case has the discretion to reconsider, although the exact parameters of that authority have been notoriously difficult to pin down. Indeed, in People v Callace (151 Misc 2d 464, 465 [Suffolk County Ct 1991]), the court noted that “[t]he issue as to whether and to what extent a court has ‘inherent power’ in respect to proceedings before it has been and continues to be a vexing problem.”
Here are a few uncontroversial examples: People v Williams (87 NY2d 1014, 1015 [1996]) holds that a court has the “inherent power to correct an illegal sentence.” People v Smith (23 Misc 3d 1140[A], 2009 NY Slip Op 51210[U], *2 [Crim Ct, NY County 2009]) identifies the “inherent power of a Court to correct its records in order to conform the record to the truth.” And, in People v Schuler (23 Misc 3d 1137[A], 2009 NY Slip Op 51176[U], *3 [Crim Ct, Rungs County 2009]), the court relied *577 on a court’s “inherent power to correct its own mistakes” in reconsidering its prior ruling as to whether statements attributed to the complainant in an accusatory instrument constituted excited utterances. (See also People v Prince, 132 Misc 2d 718, 721 [Sup Ct, NY County 1986] [court has inherent power to impose sanctions even though “no statute exists” authorizing them].)
C. The Court Grants the People Leave to Reargue
The issue here is not materially different from those discussed above where a court has relied on its inherent power to correct an error. And, for the following reasons, while the court believes that this power should be exercised sparingly, the court concludes that it is appropriate to grant the People leave to reargue.
First, I note that the ruling that is the subject of the motion was my own, and not that of a different judge, and was an oral ruling, not a written decision. Second, the People’s application was made promptly; they moved orally at the first available opportunity and filed a written motion within eight days of the court’s refusal to entertain an oral motion. The motion clearly is not a dilatory tactic and will not result in undue delay.
In addition, the motion has a legitimate basis — as discussed below in more detail, the People have identified a case, albeit a nonbinding one, that addresses this same issue. The case supports the People’s position and was not brought to the court’s attention by either side when the court made its original oral ruling.
And, finally, the issue is important. Whether the accusatory instrument is a misdemeanor complaint or an information affects the People’s ability to proceed with the case, since the case can only be tried on an information. (See CPL 100.10 [1].)
D. The Court Adheres to its Original Ruling
Nevertheless, although the court grants the People leave to reargue, on reargument it adheres to its original ruling, and refuses to read the two pages of the D.I.R. together, as the People suggest. To do so would circumvent the fundamental statutory requirement that an information contain sworn, first-party allegations as to every element of the offense and the defendant’s commission thereof.
1. The Nonhearsay Requirement
An information must contain “non-hearsay allegations . . . [that] establish, if true, every element of the offense charged *578 and the defendant’s commission thereof.”[1] (CPL 100.40 [1] [c] [emphasis added].) And here, the only allegations before the court that would tend to establish that this defendant is the person who committed the charged offenses remain hearsay. They are (1) the allegation in the misdemeanor complaint that the complainant told a detective that defendant was the assailant, and (2) a police officer’s report, contained on the first page of the D.I.R., that the defendant was the assailant. Neither of these satisfies CPL 100.40 (1) (c), since neither of these documents contains a sworn, firsthand report of the assailant’s identity.
2. People v Ellis and Other Cases
The misdemeanor complaint here, which takes the usual, as-told-to “I am informed by X that Y did” form, is clearly hearsay. This is self-evident, and the People do not argue otherwise. They focus instead on the D.I.R., arguing that it is a “two-page document” and that both pages were intended to, and should be, read together. In support of this argument, the People cite People v Ellis (31 Misc 3d 1213[A], 2011 NY Slip Op 50666[U] [Crim Ct, Kings County 2011]). There, as here, the supporting deposition portion of the D.I.R. did not name the assailant and the written narrative simply described the assailant by the pronoun “he,” while the first page, completed by a police officer, referred to the defendant by name. (2011 NY Slip Op 50666 [U] at *5.) That court held that
“[a]lthough the nonhearsay basis for converting the misdemeanor complaint into an information comes from [the complainant’s] written statement, which does not specifically include the Defendant’s name, both pages of the DIR may be read together as a single document and when read together they adequately identify the Defendant ... as the perpetrator.” (Id. at *6.)[2]
*579 3. The Court Disagrees with Ellis
For the following reasons, at least on the specific facts presented here, the court disagrees with Ellis and declines to follow it. The argument that the two pages of a two-page D.I.R. should be read together, although it has some surface appeal, has one important, and fatal, limitation: Those two pages are intended to be read together as a police report, but not as an affidavit.
As a police report, a D.I.R. can provide reasonable cause to believe that the person named in the D.I.R. committed a crime, and can serve as the basis for an arrest. (See CPL 140.10 [1] [b].) And indeed, that appears to be exactly what happened here. On February 15, 2015, some five months after the D.I.R. was completed, an officer who was familiar with the content of this D.I.R. placed the defendant under arrest for the offenses made out by the facts contained therein. But, unlike the statutory requirements for an information — which are at issue here — there is no nonhearsay requirement for establishing reasonable cause. To the contrary, even double hearsay can establish that. (See People v Parris, 83 NY2d 342, 346 [1994].)
But reading the two pages together as an affidavit requires a different calculus. Given the statutory requirements that there be nonhearsay allegations in support of every element of the offenses charged and of the defendant’s commissions of those offenses (CPL 100.40 [1] [c]), and that those allegations be sworn (CPL 100.20), reading the two pages together here would mean that this prosecution could move forward on the misdemeanor complaint, in the same manner as if an information had been filed, without there being a sworn statement, from someone with actual knowledge, that the defendant was the person who committed the crimes charged.
For several reasons, this would be inappropriate. The first reason is the most obvious: Even though the D.I.R. is a two-page document, it is not a two-page affidavit. The first-party, sworn allegations are confined to the second page, and make no reference at all to the preceding page.
The court also notes that defendant was not present when the D.I.R. was completed. The form was completed on September 16, 2014, but the defendant was not arrested until February 15, 2015.[3] Thus, while in a different case, there might be a natural inference that the term “he” on the supporting deposi *580 tion page refers to a person present at the time and place that the D.I.R. is being completed, and who is named on the first page, that inference is not available here.
That said, the court agrees that there will be some cases where an unnamed individual is nevertheless sufficiently-identified in the supporting deposition through some means other than the hearsay on the first page of the D.I.R. Indeed, recently, this court held in an oral ruling that a D.I.R. supporting deposition that identified the assailant as “my husband” converted the misdemeanor complaint where there was little doubt that the defendant before the court was indeed the complainant’s husband.[4] But those other means are not present here. (Cf. People v Cha Kim Son, 4 Misc 3d 1007[A], 2004 NY Slip Op 50755 [U] [Mount Vernon City Ct 2004] [information was sufficient where, although complainant gave the wrong name for the defendant in the supporting deposition, she identified the defendant in a lineup before the defendant was arrested].)
In addition, there is no way of knowing with certainty that the complainant was the source of the information on the first page of the D.I.R. It might have been the complainant, but it might not have been: perhaps an eyewitness, or a third party to whom the complainant told what happened, gave that information to the police officer, who then completed the first page. Nor is there any evidence that the complainant ever reviewed for accuracy, or even knew of the existence of, the first page of the D.I.R. In fact, there is no way of even knowing that the first page was completed before the second page. They were completed by different individuals, and it is entirely possible that the complainant filled out the supporting deposition page before the officer completed the other page. All of this renders it particularly inappropriate to read the two pages together as a single, sworn document in the way that the People suggest.
For all these reasons, then, on the facts here, there is simply no basis for the court to conclude that the supporting deposition page of the D.I.R. incorporated by reference the facts, including the suspect’s identity, contained on the first page.
*581 Accordingly, while the two pages of the D.I.R. might properly be read together as a police report, and it indeed appears that they were in this case, the court cannot read them together as a supporting deposition. The court adheres to its original ruling.
4, This is Not an Inappropriately Hypertechnical Reading of the D.I.R.
Finally, the court notes that this decision does not run contrary to the Court of Appeals’ warning that the allegations in an information should be given “a fair and not overly restrictive or technical reading.” (People v Casey, 95 NY2d 354, 360, [2000].) It is perfectly reasonable, and neither unfair nor hypertechnical, to demand that — somewhere in one of the documents set out in the CPL for this precise purpose — someone with actual knowledge swear that the defendant before the court is the person who committed the offense or offenses charged. That critical requirement remains unfulfilled here.
E. Conclusion
For the foregoing reasons, the People’s motion for leave to reargue is granted, but on reargument, the court adheres to its prior ruling.
III. Conclusion
The People’s motion for leave to reargue is granted. On re-argument, however, the court adheres to its original decision.

. The court notes that, even without this final clause, its ruling would be the same because the defendant’s identity is an element of the offense. (See e.g. People v Knight, 87 NY2d 873, 877 [1995, Titone, J., dissenting].)

. Ellis follows an Appellate Term decision, People v Revenco (28 Misc 3d 126[A], 2010 NY Slip Op 51171[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]), in which the court held that a two-page supporting deposition clearly identified the defendant. While that court did not specifically identify the document at issue as a D.I.R., the judge in Ellis retrieved the court file on his own, reviewed it, and determined that the document discussed in Revenco was indeed a two-page D.I.R. (Ellis, 2011 NY Slip Op 50666[U], *5.)

. Obviously, if defendant had been there when the report was made, he would have been arrested that same day.

. Another such case is People v Williams (36 Misc 3d 1234[A], 2012 NY Slip Op 51596[U] [Webster Just Ct 2012]). There, the facts alleged in the misdemeanor complaint and those contained in the supporting deposition, which did not name the defendant, dovetailed in such a way as to lead to an inescapable conclusion that the defendant was the person who committed the charged offense.