People v Adams (2025 NY Slip Op 51772(U))

[*1]

People v Adams

2025 NY Slip Op 51772(U)

Decided on November 6, 2025

Supreme Court, Bronx County

Powell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 6, 2025
Supreme Court, Bronx County

The People of the State of New York,

against
Timothy Adams, Defendant.

Ind. No. 74740-23

Verena C. Powell, J.

The People move this court to renew and reargue its May 14, 2025, Decision and Order, that suppressed the contents of Defendant's crossbody bag, "alter its prior determination of defendant's motion and instead deny the motion to suppress; and "issue a written decision . . . that find[s] [the] officers in this case lawfully recovered the firearm and deny the defendant's motion to suppress." Defendant opposes the People's instant motion, asserting the court reached the correct conclusion on review of the credible testimony and the law.
The People's motion for leave to reargue is granted to the extent of granting leave to reargue their opposition to Defendant's motion to suppress statements and physical evidence, and upon reargument, the court stands by its original determination. Further, the People's motion for leave to renew [FN1]
is granted to the extent of granting leave to renew the motion opposing suppression, and upon renewal, the court denies the motion.
Procedural History
Defendant Timothy Adams filed his omnibus motion on December 28, 2023, seeking an inspection of the grand jury presentation and suppression of physical evidence allegedly recovered from him and statements attributed to him. The People opposed the motion on January 25, 2024. The court issued its decision, finding the grand jury presentation legally sufficient to support the charges contained in the indictment and granting the Defendant's motion to suppress to the extent of granting a Mapp/Huntley/Dunaway hearing. The court conducted hearings on May 2, 2024. The parties each filed a post-hearing memorandum of law, the Defendant on June 3, 2024, and the People on July 1, 2024. Defendant filed a reply to the People's submission on July 15, 2024.
This court issued its decision suppressing both the physical evidence and statements attributed to Defendant on May 14, 2025. The People claim that the Defendant served them with the Decision and Order, accompanied by a Notice of Entry, on or about May 14, 2025. The People filed the instant motion on June 12, 2025. The Defendant filed its opposition on July 17, [*2]2025. The People's filings to reargue or renew are timely.

Discussion
As a threshold matter, Civil Practice Law and Rules 2221 sets forth the procedure under which to make a motion to renew or reargue.[FN2]
This section applies to civil practice as "'the CPLR has no application to criminal actions and proceedings' except where expressly referenced" (People v Baptiste, 70 Misc 3d 706, 708 [Crim Ct, New York County 2020]) (citing People v Silva, 122 AD2d 750, 750 [1st Dept 1986]). "Nothing in the (CPL) provides a legal vehicle for a (party) to petition a court to renew, reargue or reconsider a previously rendered decision" (People v Bauza, 79 Misc 3d 1222[A], *2 [Sup Ct, Kings County 2023]).
Where no applicable provision in the Criminal Procedure Law addresses the situation at hand, New York criminal courts have followed one of two paths. They have either applied those provisions of the CPLR that have addressed the issue (see Bauza, supra; People v Borzon, 47 Misc 3d 914 [Sup Ct, Bronx County 2015]; People v Davis, 169 Misc 2d 977 [County Ct, Westchester County 1996]; People v Radtke, 153 Misc 2d 554 [Sup Ct, Queens County 1992]). Or they have relied on a trial court's inherent power to correct its own mistakes. As the Court of Appeals in People v Minaya, 54 NY2d 360, 364 (1981) reflected,
"It is well settled that courts possess 'inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth' (Bohlen v Metropolitan El. Ry. Co., 121 NY 546, 550-551). This power exists in criminal as well as civil cases . . . ." (People ex rel. Hirschberg v Orange County Ct., 271 NY 151, 15).
"Although the court concludes that a motion for leave to reargue under CPLR 2221 does not lie in a criminal case, the court also concludes that a trial court's inherent power to correct its own mistakes includes the power to grant leave to reargue, where appropriate" (People v DeFreitas, 48 Misc 3d 569, 576 [Crim Ct, New York County 2015]). As the People claimed that this court overlooked or misapprehended matters of fact or law, leave to reargue this court's decision dated May 14, 2025, is granted pursuant to CPLR 2221 (d).
A motion for reargument is addressed to "the sound discretion of the court which decided the prior motion and may be granted upon a showing that the court overlooked or misapprehended the facts or law or mistakenly arrived at its earlier decision" (Viola v City of [*3]New York, 13 AD3d 439, 440 [2d Dept 2004], citing Perez v Linshar Realty Corp., 259 AD2d 532 [2d Dept 1999]; Loland v City of New York, 212 AD2d 674 [2d Dept 1995]). "Notably, a party may not simply move to reargue. Rather, a party must ask for leave to do so by identifying that reargument is sought and specify the basis upon which it is sought" (Borzon at 916). "Reargument is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided or to present arguments different from those originally asserted" (Pahl Equip. Corp. v Kassis, 182 AD2d 22, 27 [1st Dept 1992]) (internal citations omitted).
On this motion to reargue, the People claim this court overlooked three facts that justify the officer's common-law right of inquiry. First, the Defendant refused to obey the officer's command to stay in the vehicle. Second, the officer observed a controlled substance in the Defendant's bag. Third, the Defendant concealed the bag from the officer's view.
This court addressed these points in the original decision and found them to be unavailing. The Court of Appeals in People v DeBour, 40 NY2d 210, 222-223 (1976), established a four-tier analysis to evaluate street encounters with the police. Level one permits an officer to approach an individual to request information so long as the request is supported by "some objective credible reason for that interference not necessarily indicative of criminality" (id. at 223). Level two, the common law right of inquiry, allows an officer to further inquire and "interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (id.). At level three, officers may forcibly stop and detain an individual upon reasonable suspicion that the person has committed, is committing, or is about to commit a felony or misdemeanor. Finally, level four authorizes officers to arrest a person upon probable cause that the person has committed a crime. Each progressive level authorizes greater police intrusion and therefore requires the officer to escalate suspicion (People v Hollman, 79 NY2d 181, 185 [1992]). The De Bour framework applies equally to street encounters and traffic stops (People v Garcia, 20 NY3d 317, 324 [2012]).
The testimony before this court establishes that Police Officer Vinicio Garcia (Officer Garcia) was aware that the driver of the vehicle committed several vehicle and traffic law violations, including driving at an excessive rate of speed, having excessive window tint, and reckless driving, as illustrated by a near collision with a school bus. Finally, neither the driver nor the front seat passenger was wearing a seat belt. Officer Garcia had sufficient information to temporarily stop the vehicle and ticket the driver for several vehicle and traffic law infractions, as well as the front seat passenger for failing to wear a seatbelt (Vehicle and Traffic Law 1229-C [3]; People v Banks, 85 NY2d 558 [1995]) (driver and front passenger's failure to wear seat belts justified the stop, but subsequent detention was improper). As stated in the court's original decision, the stop of the vehicle was a lawful level 2 intrusion. That intrusion applies to the driver, not the passenger, as he was not operating the car and would not be subject to additional scrutiny.
Although Officer Garcia had a right to request information from the driver and the passenger, (see e.g., People v Alejandro, 142 AD3d 876 [1st Dept 2016] [finding that police had an objective, credible reason for approaching an illegally parked car]), his questions to Defendant are limited to a basic request for information, a level one inquiry (see People v Williams, 144 AD3d 1636, 1636 [4th Dept 2016] [holding that "after the stop, the officer was permitted to approach defendant as a passenger in the vehicle and ask nonincriminating questions"]).
Federal and state courts have held that an officer is authorized to direct the driver of the [*4]vehicle out of the car (People v Mimms, 434 US 106 [1977]; People v Robinson, 74 NY2d 773 [1989], cert denied 493 US 966[1989]), and the officer may also order passengers out of the car (Maryland v Wilson, 519 US 408 [1997]; People v Garcia, supra), or may request the passenger to remain inside the vehicle (People v Forbes, 283 AD2d 92 [2d Dept 2001]). Here, as an officer tells the driver over the loudspeaker to "turn it off," referring to the car's engine, Defendant gets out of the vehicle (People's exhibit 1 at 15:20:29). Only then did an officer tell Defendant to stay in the car (id. at 15:20:32). It is unclear from the body worn camera footage if Defendant heard Officer Garcia's verbal command (People's exhibit 1 at 15:20:33). Though another officer repeated the command (id. at 15:20:35), Officer Garcia did not allow Defendant to comply before placing his hands on Defendant's back and stomach (id. at 15:20:38) and directed Defendant to the rear of the vehicle. Officer Garcia's physical intrusion escalated the encounter to level three by forcibly detaining the Defendant. There was no time for Defendant to comply with the instruction to return to the car, nor any indication that Defendant would have refused to comply with that instruction. Thus, Defendant's action or inaction cannot be interpreted as being in defiance of the officers' instructions.
Concerning the alleged controlled substance in Defendant's bag, this court did not credit Officer Garcia's testimony. Upon reviewing the body-worn camera footage, the bottle of lean is not visible, contrary to Officer Garcia's testimony that he could see the bottle from the top of Defendant's open crossbody bag. As the Defendant exits the car, the crossbody bag is clearly visible. The bag features a zippered opening across the top and a second zipper on a smaller pocket located on the front of the bag. The zipper to the smaller pocket is open (id. at 15:20:43); however, nothing is visible other than the pocket's lining. Furthermore, the main compartment of the bag remained closed until Defendant opened it to retrieve his identification (id. at 15:20:56). As Defendant opens the bag, Officer Garcia restricts Defendant's movement by pressing his body against Defendant as he opens the bag for his identification (id. beginning at 15:20:57). It is apparent from the video that Defendant had to maneuver the bag to gain access to its contents.[FN3]
Again, the bottle is not visible. Although partially out of the body worn camera's range, Officer Garcia was then seen grabbing the crossbody bag before alerting his fellow officers.
The People's contention that the court did not consider the Defendant's alleged furtive movements, as testified to by Officer Garcia, is incorrect. Those movements included the Defendant's nervousness, looking up, as if searching for a way to escape, and attempts to push his crossbody bag behind him. After walking the Defendant to the back of the car, in addition to requesting identification, Officer Garcia demanded to know what else besides weed was in the bag (hearing tr at 23).[FN4]
The Defendant's movements, according to the prosecution, raised the [*5]officer's level of suspicion, allowing him to frisk the bag.
Nervousness is not synonymous with criminality. Although nervousness may give an officer a reason to approach an individual and to "ask a few general, nonaccusatory questions," it was insufficient to "warrant further intrusion of a request to rummage through the defendant's [belongings]" (People v Hollman, at 194). Or, as happened here, Defendant's nervousness is not an excuse for Officer Garcia to press his body against the Defendant and grab his bag without provocation. We previously discussed and dismissed the positioning of the crossbody bag. The Defendant's behavior did not rise to the level of a founded suspicion of criminality (see People v Garcia, at 324 [2012] [finding no founded suspicion to justify inquiry into weapons in car when "the evidence demonstrated only that the occupants of the vehicle appeared nervous," including furtive movements]), nor did it give rise to the reasonable suspicion that criminal activity was afoot (People v Dealmeida, 124 AD3d 1405, 1407 [4th Dept 2015] [defendant's nervousness and discrepant responses did not give rise to a reasonable suspicion that criminal activity was afoot]).
The People assert that this court premised its analysis on the mistaken understanding that the bulge was unidentified. The People point to First Department precedent that allows the frisk of a person's bag upon observation of an identifiable bulge (see People v Drone, 272 AD2d 53, 53 [1st Dept 2000] ["The police witness's testimony on direct examination that she observed 'the outline of a gun' through the outside of Defendant's pocket, especially when taken together with her testimony concerning the existence of other suspicious circumstances, was potentially sufficient, if credited by the court, to defeat the suppression motion"]). In the present case, when granting the Defendant's suppression motion, this court found that the officer's testimony regarding his observation of an identifiable L-shaped bulge contradicted the video evidence. Here, the frisk preceded the observation, not vice versa. Furthermore, although an identifiable bulge is a strong factor in justifying a frisk, it is just one factor among the totality of the circumstances that a court must consider. In People v Bowman (222 AD3d 538, 540 [1st Dept 2023]), the First Department found that a frisk was justified where "[p]ursuant to the first Prochilo factor, these observations [of the outline of a pistol in the defendant's pocket] constituted proof of a 'describable object' that 'provide[d] a reasonable basis for the police officer's belief that the defendant had a gun in his possession,' justifying the officer's immediate frisk of Defendant's pocket." But in People v Prochilo (41 NY2d 759, 761 [1977]), the Court of Appeals instructed that "[a]t least three aspects of each individual transaction should be considered." The observation of what appears to be a gun is but one factor. The other two factors include the reasonableness of the officer's approach to the Defendant, and the possibility of a pretext stop and frisk or other improper purpose. Here, the officer's approach to the Defendant was not reasonable under the circumstances and thus also fails to satisfy the second Prochilo factor.
The People insist that the officer's brief touching of the bag was a reasonable safety measure that did not require reasonable suspicion. The People cite People v Anderson (17 AD3d 166 [1st Dept 2005]) for the proposition that an officer may frisk an individual if the officer has specific and articulable safety concerns that the individual is armed. However, Anderson does not address frisks. Instead, in Anderson, the First Department, acknowledging the risk that police officers may face in traffic stops, held that the reasonableness of police conduct must be evaluated in view of the totality of the circumstances. Thus, the finding of the removal of occupants from the car and search of the vehicle's console, leading to the recovery of a weapon, was reasonable under the circumstances.
Finally, the People rely on People v Perez (31 NY3d 964 [2018]) to justify a limited search when an officer believes their safety is at risk due to a defendant's behavior in conjunction with other facts and circumstances. In Perez, in addition to an observable bulge in Defendant's right arm, "[d]efendant ignored an officer's request that he hold the door and instead 'kept pushing the button' and the elevator doors closed . . . Rather than respond to the officer's questions, Defendant turned away from the police to face the wall, held his head down with the hood of his sweatshirt over his head, and kept his hands hidden inside his sweatshirt." The facts in Perez differ markedly from the facts presented here. In this case, the Defendant's allegedly suspicious behavior consists of failing to return to the vehicle within two to three seconds, looking up at the sky for an escape, and moving his bag behind him when confronted by the officer. 
As Defendant's actions were "at all times innocuous and readily susceptible of an innocent interpretation, and, as such, may not generate a founded suspicion of criminality" (People v Powell, 246 AD2d 366, 369 [1998], appeal dismissed 92 NY2d 886 [1998] ["The People argue that the totality of circumstances — the defendant's quick pace, his adjustment to his waistband during the initial police observation, his walking with arm stiffly against his body during the second encounter, the high-crime nature of the area and his inconsistent and evasive responses during the police questioning — provided the officers with a reasonable suspicion that defendant was in possession of a gun. We disagree."]. 
The People have not demonstrated that this court overlooked or misapprehended either the law or the facts in this matter, nor have they presented any new facts, or demonstrated a change in the applicable law; thus, their motions to reargue and to renew fail in their entirety. As a result, this court adheres to its original determination.

Conclusion
Accordingly, the People's motion for leave to reargue is granted, and upon reargument, denied. The People's motion for leave to renew is also granted; however, upon renewal, it is denied.
This decision constitutes the Order of this Court.
Dated: November 6, 2025
Bronx, New York
HON. VERENA C. POWELL, A.S.C.J.

Footnotes

Footnote 1:The People, in the conclusion of their memorandum of law, refer to their submittal as a "motion to renew and reargue."

Footnote 2:Pursuant to CPLR 2221 (d), "A motion for leave to reargue:

 2. shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion; and
 
3. shall be made within thirty days after service of a copy of the order determining the prior motion and written notice of its entry."
Whereas a motion for leave to renew, CPLR 2221 (e),

 2. "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and
 
3. shall contain reasonable justification for the failure to present such facts on the prior motion."

Footnote 3:Also, although the straps of a crossbody bag typically dissect the upper body diagonally, thus the name crossbody, the pouch itself usually rests on the person's side.

Footnote 4:The officer's question of whether the defendant had anything illegal on him constituted a level two common-law inquiry, which required a founded suspicion that criminal activity was afoot (see Garcia, at 324). However, this discussion is merely academic, as Officer Garcia had executed a level three intrusion when he deprived the Defendant of the liberty of movement after the Defendant exited the vehicle.